USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 94-2227 NYDIA G. RODRIGUEZ, a/k/a NYDIA G. RODRIGUEZ BRUNO, Plaintiff, Appellee, v. DORAL MORTGAGE CORP., Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ _________________________ Radames A. Torruella, with whom Carmencita Velazquez-Marquez ____________________ ____________________________ and McConnell Valdes were on brief, for appellant. ________________ Erick Morales-Perez, with whom Humberto Ramirez was on ____________________ _________________ brief, for appellee. _________________________ June 23, 1995 _________________________ SELYA, Circuit Judge. This appeal invites us to SELYA, Circuit Judge. ______________ explore, and in turn to demarcate, the outer boundaries of a promontory of federal judicial power. At the base of the appeal is a sexual harassment suit brought by Nydia G. Rodriguez Bruno (Rodriguez) against her former employer, Doral Mortgage Corporation (Doral).1 Premising jurisdiction on the assertion of a federal civil rights violation, see 28 U.S.C. 1331, ___ 1343(a)(4), the plaintiff pressed a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e to 2000e-17 (1988), and hitched to it a pendent claim under a Puerto Rico statute known colloquially as Law 100.2 After first holding that the amendments embodied in the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (codified as amended at scattered sections of 42 U.S.C.), did not apply to this case in light of Landgraf v. USI Film Prods., 114 S. Ct. 1483 (1994), the district ________ _______________ court rejected each of the plaintiff's pleaded claims. The court nonetheless entered judgment in her favor based on Law 17, P.R. Laws Ann. tit. 29, 155-155(l) (Supp. 1992)3 and did so  ____________________ 1Technically, Rodriguez and her parents sued Doral and several associated individuals and entities, including Miguel Berrios, her immediate supervisor. Because none of these claims is relevant to this appeal, we treat the case as if it involved only a suit by Rodriguez (plaintiff-appellee) against Doral (defendant-appellant). 2In pertinent part, Law 100 forbids, on penalty of both civil and criminal sanctions, adverse employment actions based on any one of several protected characteristics, including sex. See ___ P.R. Laws Ann. tit. 29, 146 (1985). 3In substance, Law 17 penalizes sexual harassment by employers or their agents. Under its terms as interpreted by the district court, employers are held strictly liable for damages 2 notwithstanding that the plaintiff had neither pleaded a cause of action thereunder nor invoked the statute at trial. Three questions are now before us. (1) May a district court enter judgment for a plaintiff on a cause of action that was neither pleaded in the complaint nor raised during the course of trial? (2) May a district court prior to the close of trial unilaterally introduce an unpled cause of action into the proceedings? (3) In any event, may a district court, on remand, assume supplemental jurisdiction over a nonfederal cause of action that could have been introduced during trial, when (a) neither the plaintiff nor the district court in fact introduced the cause of action before the end of the trial, and (b) the foundational federal claim, though originally colorable, has since been repulsed on the merits? Because we answer the first question in the negative, we must vacate the judgment below.4 We turn then to choice of remedy, and, after answering both the second and third questions in the affirmative, we remand for further proceedings.  ____________________ arising out of harassment in the workplace (at least when perpetrated by a supervisor). The statutory language is inexplicit, however, and the Puerto Rico Supreme Court has handed down only one opinion construing Law 17. See Delgado Zayas v. ___ ______________ Hospital Interamericano de Medicina, 94 J.T.S. 149 (P.R. 1994). ____________________________________ That opinion does not speak to the question of strict liability, and we regard Law 17's precise meaning as problematic. 4In actuality, the judgment below represents a split decision. While it encompasses the district court's rulings in Doral's favor on all the pleaded claims, Rodriguez has not challenged these rulings and they are unaffected by this appeal. All references herein to the judgment are, therefore, limited to the second portion of the judgment, which comprises the award of damages to the plaintiff under Law 17. 3 I. FACTUAL AND PROCEDURAL HISTORY I. FACTUAL AND PROCEDURAL HISTORY We begin with the facts as supportably found by the district court after a bench trial. See Rodriguez Bruno v. Doral ___ _______________ _____ Mortgage Corp., No. 92-2497, slip op. at 1-9 (D.P.R. Sept. 19, _______________ 1994) (D. Ct. Op.). We then proceed to chart the procedural history of the litigation. Doral hired Rodriguez in March of 1990 as a loan processor and transferred her the following January to its Hato Rey branch. There, she worked as a receptionist under the hegemony of Miguel Berrios. Over a period of several weeks, multiple incidents of sexual harassment occurred, including nonconsensual physical contacts initiated by Berrios. Rodriguez reported the harassment to two of Doral's top executives. These officials assured her that Berrios would be transferred, and, as it turned out, he resigned soon thereafter. Despite Berrios' departure, Rodriguez filed a complaint with the Puerto Rico Department of Labor in which she charged sexual harassment in consequence of an unlawfully hostile work environment. This grievance ultimately spawned the federal suit. The case was tried to the bench. The judge found the work environment to be "hostile" within the meaning of Title VII, but also found that Doral had neither actual nor constructive notice of the problem prior to Rodriguez' internal complaints. He concluded, therefore, that Doral could not be held liable under Title VII. The judge also ruled that Berrios could not be held liable because Title VII, as it stood before the 1991 amendments, 4 did not impose liability on individual harassers. See D. Ct. Op. ___ at 14. So ended the plaintiff's federal claims. The court, however, did not consign the plaintiff to the ignominy of unmitigated defeat. Without passing in so many words on the Law 100 claim, the court departed from the pleadings on its own initiative and decided the suit in the plaintiff's favor by recourse to Law 17. Describing Law 17 as a "complementary statute regarding sexual harassment," and interpreting it as "provid[ing] for strict liability where the alleged harasser is a supervisor," id. at 15, the court held ___ Doral liable to Rodriguez for $100,000 in damages, see id. at 19, ___ ___ and entered judgment accordingly. Doral now appeals. II. THE UNPLEADED CLAIM II. THE UNPLEADED CLAIM We begin our trek through the thicket of controversy by attempting to ascertain whether the lower court's entry of judgment based on Law 17 can be justified from a procedural standpoint. Because the necessary inquiry focuses on the inclusion and exclusion of claims in a civil action in a federal district court, the Federal Rules of Civil Procedure govern. See ___ Fed. R. Civ. P. 1; see also 28 U.S.C. 2072(b); see generally ___ ____ ___ _________ Charles A. Wright, Law of Federal Courts 62 (5th ed. 1994). ______________________ The lower court's action in respect to the Law 17 claim implicates no fewer than three of these rules, namely, Rule 8(a), Rule 15(b), and Rule 54(c). We conduct our examination mindful of two precepts: (1) that the Civil Rules cannot conjure up jurisdiction where none otherwise exists, see Fed. R. Civ. P. 82 ___ 5 (admonishing that the Civil Rules "shall not be construed to extend . . . the jurisdiction of the United States district courts"); Wendy C. Perdue, Finley v. United States: Unstringing ______ _____________ ___________ Pendent Jurisdiction, 76 Va. L. Rev. 539, 563 n.146 (1990) ____________________ (addressing this limitation), and (2) that apart from the Civil Rules, "the district courts retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner," Aoude v. Mobil Oil Corp., 892 F.2d 1115, _____ _______________ 1119 (1st Cir. 1989). A. Rule 8(a). A. Rule 8(a). _________ Fed. R. Civ. P. 8(a)(2) requires that a complaint contain, inter alia, "a short and plain statement of the claim _____ ____ showing that the pleader is entitled to relief . . . ." The mandate of Rule 8(a)(2) comprises a threshold requirement. Despite the admonition that "[a]ll pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), failure to comply with Rule 8(a)(2) may render an unpleaded claim noncognizable when the plaintiff (or the court, for that matter) subsequently teases it out of adduced facts. It would not serve the interests of justice, for instance, to redeem a totally unpleaded, unlitigated claim in circumstances that threaten significant prejudice to a defendant. The bottom line is simply this: while courts should construe pleadings generously, paying more attention to substance than to form, they must always exhibit awareness of the defendant's inalienable right to know in advance the nature of 6 the cause of action being asserted against him. See Beacon ___ ______ Theatres, Inc. v. Westover, 359 U.S. 500, 506 (1959); Conley v. ______________ ________ ______ Gibson, 355 U.S. 41, 47 (1957); Campana v. Eller, 755 F.2d 212, ______ _______ _____ 215 (1st Cir. 1985); Shelter Mut. Ins. Co. v. Public Water Supply _____________________ ___________________ Dist. No. 7, 747 F.2d 1195, 1197 (8th Cir. 1984). A fundamental ____________ purpose of pleadings under the Federal Rules of Civil Procedure is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest. See Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st ___ ______________ ________________ Cir. 1990). Honoring this purpose ensures that cases will "be decided on the merits after an adequate development of the facts." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). _____ _____ In the case at hand, the plaintiff wholly failed to plead a Law 17 claim. Her complaint did not delineate such a claim when filed; she did not add one by formal amendment; she did not mention the statute in her pretrial filings; and she did not explicitly refer to it at any point during the trial. In short, this is not a case in which a properly pleaded legal theory has been obscured by the parties' concentration on other theories, cf. Campana, 755 F.2d at 215, but, rather, a case in ___ _______ which a particular legal theory was never so much as a gleam in the pleader's eye. It is true, as the district court observed, that the pretrial order referred at one point to "strict liability," the very property with which the district court imbued Law 17. See ___ D. Ct. Op. at 15. Whatever the potential legal significance of 7 this fleeting mention, it is not sufficiently informative to satisfy the "short and plain statement" requirement of Rule 8(a)(2). See, e.g., Campana, 755 F.2d at 215. By like token, it ___ ____ _______ surely did not give Doral fair notice that the plaintiff would assert a claim premised on Law 17 or that the judge would pull one out from beneath his robe, like a rabbit from a magician's hat. We will not loiter. Though we fully appreciate that a complaint may be constructively amended as a case proceeds, see, ___ e.g., Toth v. USX Corp., 883 F.2d 1297, 1298 (7th Cir.), cert. ____ ____ _________ _____ denied, 493 U.S. 994 (1989), this principle cannot mean that ______ plaintiffs may leave defendants to forage in forests of facts, searching at their peril for every legal theory that a court may some day find lurking in the penumbra of the record. Under the Civil Rules, notice of a claim is a defendant's entitlement, not a defendant's burden. The truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush. At a bare minimum, even in this age of notice pleading, a defendant must be afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense. The district court's revisionist treatment of the case deprived Doral of these perquisites. Thus, unless the district court's purported adjudication of the Law 17 claim can be salvaged on some other basis, it must be set aside. 8 B. Rule 15(b). B. Rule 15(b). __________ To this end, we next train the lens of inquiry on Fed. R. Civ. P. 15(b). That rule permits the consideration of unpleaded claims "by express or implied consent" of the parties.5 Because the record here discloses no whisper of express consent even the plaintiff concedes its absence our inquiry narrows to the possibility of implied consent. For purposes of Rule 15(b), implied consent to the litigation of an unpleaded claim may arise from one of two generic sets of circumstances. First, the claim may actually be introduced outside the complaint say, by means of a sufficiently pointed interrogatory answer or in a pretrial memorandum and then treated by the opposing party as having been pleaded, either through his effective engagement of the claim or through his silent acquiescence. See, e.g., Action ___ ____ ______ Mfg., Inc. v. Fairhaven Textile Corp., 790 F.2d 164, 167 (1st __________ ________________________ Cir.) (as amended per curiam) ("As a general principle the presentation of claims beyond the complaint without objection is  ____________________ 5The rule provides in pertinent part: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . . Fed. R. Civ. P. 15(b). 9 considered an informal amendment of the complaint."), cert. _____ denied, 479 U.S. 854 (1986); see also Lynch v. Dukakis, 719 F.2d ______ ___ ____ _____ _______ 504, 508 (1st Cir. 1983). Second, and more conventionally, "[c]onsent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue." DCPB, Inc. v. City of Lebanon, __________ _______________ 957 F.2d 913, 917 (1st Cir. 1992); accord Law v. Ernst & Young, ______ ___ _____________ 956 F.2d 364, 375 (1st Cir. 1992); Campana, 755 F.2d at 215; _______ Lynch, 719 F.2d at 508. In other words, "[t]he introduction of _____ evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case." DCPB, 957 F.2d at ____ 917; accord Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. ______ _______ __________ 1986) ("It is not enough that an issue may be `inferentially suggested by incidental evidence in the record'; the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue.") (quoting Cole v. Layrite Prods. Co., 439 ____ __________________ F.2d 958, 961 (9th Cir. 1971)). Here, no such constructive amendment occurred. The first avenue to implied consent is a dead end: the fleeting reference to "strict liability" contained in the pretrial order, see supra pp. 7-8, cannot by any stretch of even the most fertile ___ _____ imagination support such a finding. See Grand Light & Supply Co. ___ ________________________ v. Honeywell, Inc., 771 F.2d 672, 680 (2d Cir. 1985) (cautioning _______________ that "[t]he purpose of Rule 15(b) is . . . not to extend the pleadings to introduce issues inferentially suggested"). And 10 apart from that one passing allusion, there is nothing to suggest that a Law 17 claim was insinuated at trial, let alone engaged or embraced by Doral. The second avenue that sometimes leads to implied consent is equally unpassable in this setting: the plaintiff did not introduce any evidence that was relevant only ____ to a claim under Law 17. Nor is this surprising; when, as now, the pleaded and unpleaded claims are of much the same genre, the likelihood of differential discernment on the defendant's part is relatively low. In fine, the absence of express or implied consent renders it impossible to fit the district court's freelancing within the confines of Rule 15(b). Though we appreciate that the root purpose of the rule is to combat "the tyranny of formalism," Rosden v. Leuthold, 274 F.2d 747, 750 (D.C. Cir. 1960), it cannot ______ ________ be so liberally construed as to empty Rule 8(a) of all meaning.6 C. Rule 54(c). C. Rule 54(c). __________ The plaintiff's last justificatory basis for the district court's action is Fed. R. Civ. P. 54(c). The rule, which we have explicated on earlier occasions, see, e.g., Dopp v. ___ ____ ____ HTP Corp., 947 F.2d 506, 517-18 (1st Cir. 1991); United States v. _________ _____________  ____________________ 6We note that, even if we could detect some indicium of consent, access to the unguent of Rule 15(b) might well be blocked on another ground. One limit on the operation of Rule 15(b) is that the opposing party not be prejudiced. See DCPB, ___ ____ 957 F.2d at 917 ("It is axiomatic that amendments which unfairly prejudice a litigant should not be granted."). Here, Doral had no advance warning of the Law 17 claim and no meaningful opportunity to defend against it. Hence, the likelihood of unfair prejudice looms large. See id.; see also Cioffe v. ___ ___ ___ ____ ______ Morris, 676 F.2d 539, 542 (11th Cir. 1982). ______ 11 Marin, 651 F.2d 24, 31 (1st Cir. 1981), provides, in relevant _____ part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." According to the plaintiff, the judgment is simply a means of granting her the relief which she deserved, even though she had not,inthelanguageoftherule,"demandedsuchreliefin [her]pleadings." This thesis is hollow at its core. "Rule 54(c) creates no right to relief premised on issues not presented to, and litigated before, the trier." Dopp, 947 F.2d at 518; see also In ____ ___ ____ __ re Rivinius, Inc., 977 F.2d 1171, 1177 (7th Cir. 1992) (holding _________________ that "Rule 54(c) does not allow [a party] to obtain relief based upon a . . . theory that was not properly raised at trial"); Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 923-24 (3d ________________ __________________ Cir. 1984) (explaining that the rule permits relief predicated on a particular theory "only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings"); Cioffe v. Morris, 676 F.2d 539, 541 (11th Cir. ______ ______ 1982) (similar). Thus, Rule 54(c)'s concern for appropriate relief does not include relief which a plaintiff has foregone because of failures in the pleadings or in the proof. See 6 ___ James W. Moore et al., Moore's Federal Practice 54.62 (2d ed. ________________________ 1985). Since Rodriguez offers us no principled way around this settled interpretation of Rule 54(c), we must decline her invitation to invoke the rule to her advantage. D. Recapitulation. D. Recapitulation. ______________ 12 We summarize succinctly. In the absence of mutual consent, a district court may not enter judgment for a plaintiff on a cause of action that was neither pleaded in the complaint nor raised during the course of trial. Here, the district court's resort to Law 17 contravenes this tenet. Moreover, the court's maneuver cannot be justified under the Civil Rules. Specifically, the plaintiff did not plead a Law 17 claim within the purview of Rule 8(a); the nonexistence of consent (express or implied) negates any suggestion that the pleadings were constructively amended under Rule 15(b) to include such a claim; and Rule 54(c) does not overcome these deficiencies because its safety net cannot be stretched so widely as to grant a plaintiff relief on an unpleaded theory of which the defendant had no notice. For these reasons, we hold that no claim under Law 17 was ever properly before the district court, and that the judgment cannot stand. A federal district court may not, of its own volition, after the parties have rested, recast the complaint and, without notice, predicate its decision on a theory that was neither pleaded nor tried. See Greene v. Town of Blooming Grove, ___ ______ ______________________ 935 F.2d 507, 510-11 (2d Cir.) (reversing exercise of jurisdiction over pendent claim that was neither pleaded nor discretely raised during the litigation), cert. denied, 502 U.S. _____ ______ 1005 (1991); Ruiz v. Estelle, 679 F.2d 1115, 1157 (5th Cir.) ____ _______ (rejecting concept that a court may, after trial, spontaneously consider unpleaded state-law claims through the simple expedient 13 of reshaping the plaintiffs' suit), modified on other grounds, ________ __ _____ _______ 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983); _____ ______ Cioffe, 676 F.2d at 541-43 (to like effect). ______ III. THE NEXT STEP III. THE NEXT STEP Setting aside the judgment takes us only part of the way. We must now consider the next step. The defendant beseeches us to direct the entry of a take-nothing judgment. Because the plaintiff lost on the merits of each of her pleaded claims, we recognize that it is within our power to oblige. Before charting our course, however, we pause to mull whether remand is an available alternative, and, if so, whether that alternative is preferable. Undoubtedly, a remand under the conditions that obtain here presents potential problems. For one thing, the propriety of the district court's unilateral effort to insinuate an unpleaded claim into the case is open to question. For another thing, the foundational federal claims are now out of the picture the plaintiff never cross-appealed from the adverse judgment on those claims, see supra note 4 and the district court's ___ _____ continued jurisdiction over a supplemental claim arising solely under Puerto Rico law may seem suspect. Third, the Law 17 claim itself, if free-standing, would now be time-barred. Finally, even if none of these factors absolutely precludes the discretionary exercise of remandatory jurisdiction, remand may not be the best available alternative. In the pages that follow, we address these concerns and then settle upon our next step. 14 A. The Court's Power. A. The Court's Power. _________________ Since the question of whether a district court has the power to introduce an unpleaded claim on its own initiative even up to (or beyond) the close of the trial and the question of whether a district court has the power to introduce such a claim on remand are closely related, we consider them in the ensemble. 1. In General. The proper functioning of our 1. In General. ___________ adversarial system of justice depends not only on the parties' vigorous advocacy of their positions but also on the judge's adroit supervision of the litigation. The sphere of case management extends to the definition of legal issues. To mention one of many possible illustrations, a district court possesses the authority to recommend to a plaintiff how she might reshape the complaint to escape dismissal. See, e.g., Friedlander v. ___ ____ ___________ Nims, 755 F.2d 810, 813 (11th Cir. 1985). Similarly, a district ____ court, exercising its powers under Fed. R. Civ. P. 15(b), in a proper case, "may amend the pleadings merely by entering findings on the unpleaded issues," Galindo, 793 F.2d at 1513 n.8 _______ (collecting cases), even though neither party has essayed a formal amendment. We think it follows that a district court has the power to introduce a claim (or, rather, to prompt a party to introduce a claim) at any time during the course of litigation. This power does not vanish at the tail end of a trial, even though both sides have rested. See, e.g., Campana, 755 F.2d at 215 ___ ____ _______ (recognizing court's authority to permit amendment as late as 15 during jury deliberation). This conclusion does not clash with either the letter or the spirit of Fed. R. Civ. P. 15(a). Although that rule plainly favors early amendments, see, e.g., ___ ____ id. (authorizing one revision "as a matter of course" if made ___ within certain time constraints), it sets no outer time limit on amendments; the drafters chose instead to leave the matter within the discretion of the nisi prius court. See Benitez-Allende v. ___ _______________ Alcan Aluminio do Brasil, S.A., 857 F.2d 26, 36 (1st Cir. 1988), ______________________________ cert. denied, 489 U.S. 1018 (1989); see also Fed. R. Civ. P. _____ ______ ___ ____ 15(a) (providing that leave to amend "shall be freely given when justice so requires"). As this discussion indicates (and as Fed. R. Civ. P. 15 and 28 U.S.C. 1367 confirm, see infra), the court below could ___ _____ properly have called attention to the prospect of a new, unpleaded (but related) claim at any time as long as it adopted appropriate measures to safeguard against unfair prejudice. 2. On Remand. Of course, the posture of the case is 2. On Remand. _________ now somewhat different. Doral argues that, on remand, the district court, even if it originally enjoyed the authority to introduce or entertain a new, unpleaded (but related) claim, would not still possess that power. We do not agree. Since a new, unpleaded (but related) claim could have been asserted during the trial, we see no reason to constrain a party from asserting such a claim on remand, or, correspondingly, to limit the district court's discretion in terms of entertaining such a claim. See Benitez-Allende, 857 F.2d at 36; Duckworth v. ___ _______________ _________ 16 Franzen, 780 F.2d 645, 656-57 (7th Cir. 1985), cert. denied, 479 _______ _____ ______ U.S. 816 (1986). We hold, therefore, that, apart from incipient jurisdictional problems, a district court, on remand, retains its discretionary authority to entertain a new, unpleaded (but related) claim.7 B. Supplemental Jurisdiction. B. Supplemental Jurisdiction. _________________________ Having traced the contours of the district court's discretionary power to entertain a new, unpleaded (but related) claim, both at trial and on remand, and finding that the plaintiff's Law 17 claim fits into this category, we must yet determine whether the court below can exercise supplemental jurisdiction over such a claim on remand even though the foundational federal claim is now ancient history. After carefully considering the conundrum, we conclude that the exercise of supplemental jurisdiction would be proper.8 1. In General. The controlling statute, 28 U.S.C.  1. In General. __________ 1367(a), states in relevant part:  ____________________ 7The fact that the statute of limitations for the claim may have lapsed does not present an insurmountable obstacle. If the new claim arises out of the same nucleus of operative fact, it will ordinarily relate back to the date of the institution of the suit. See Fed. R. Civ. P. 15(c); see also Benitez-Allende, 857 ___ ___ ____ _______________ F.2d at 36; Duckworth, 780 F.2d at 656-57. _________ 8"Supplemental jurisdiction" is the currently fashionable term, embraced by Congress in drafting 28 U.S.C. 1367, that now blankets both "pendent jurisdiction" and its kissing cousin, "ancillary jurisdiction." See Wright, supra, at 9, 19 ___ _____ (discussing ancillary and pendent jurisdiction, respectively, and how those doctrines have been codified and modified by section 1367). Balancing the past and the present melding the wisdom of tradition with the virtue of progress we opt for a middle course and use the terms "supplemental jurisdiction" and "pendent jurisdiction" interchangeably. 17 [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . . In enacting section 1367, Congress essentially codified the rationale articulated in United Mine Workers v. Gibbs, 383 U.S. ____________________ _____ 715 (1966). See Edmondson & Gallagher v. Alban Towers Tenants ___ ______________________ ____________________ Ass'n, 48 F.3d 1260, 1266 (D.C. Cir. 1995); Borough of W. Mifflin _____ _____________________ v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995); see generally _________ ___ _________ Elizabeth Delagardelle, Note, Defining the Parameters of ______________________________ Supplemental Jurisdiction After 28 U.S.C. 1367, 43 Drake L. __________________________________________________ Rev. 391 (1994). The Gibbs Court instructed that pendent _____ jurisdiction exists when "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional `case.'" Gibbs, 383 U.S. at 725.9 In particular, "[t]he state and _____ federal claims must derive from a common nucleus of operative fact." Id. Thus, "if, considered without regard to their ___ federal or state character, a plaintiff's claims are such that [she] would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole."  ____________________ 9The references to "state" law or "state" claims in Gibbs _____ and in the statute, see 28 U.S.C. 1367(c)-(d), are not to be ___ construed literally. Section 1367(e) expressly provides that "the term `State' includes . . . the Commonwealth of Puerto Rico . . . ." 18 Id.; see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 ___ ___ ____ _____________________ ______ (1988); Vera-Lozano v. International Broadcasting, 50 F.3d 67, 70 ___________ __________________________ (1st Cir. 1995); Brown v. Trustees of Boston Univ., 891 F.2d 337, _____ ________________________ 356 (1st Cir. 1989), cert. denied, 496 U.S. 937 (1990); Ortiz v. _____ ______ _____ United States, 595 F.2d 65, 68-69 (1st Cir. 1979). _____________ The relationship between the plaintiff's Title VII claim and her inchoate claim under Law 17 matches the Gibbs _____ Court's description in all significant respects. Both claims are civil rights claims; both derive from a reservoir of common facts; and, as a consequence, both would ordinarily be heard together in a single consolidated trial. See, e.g., Andrea ___ ____ Catania, State Employment Discrimination Remedies and Pendent _______________________________________________________ Jurisdiction Under Title VII: Access to Federal Courts, 32 Am. ____________________________ ________________________ U. L. Rev. 777, 793 (1983). Despite this apparent fit, appellant argues for an opposite result, contending that Congress, in enacting Title VII, forbade jurisdiction over supplemental claims by implication. Although there appears to be a smattering of authority in favor of this position, see, e.g., Executive ___ ____ _________ Software N. Am., Inc. v. United States Dist. Court for the Cent. _____________________ ________________________________________ Dist. of Cal., 24 F.3d 1545, 1554 n.6 (9th Cir. 1994) (noting _____________ cases so holding); 13B Charles A. Wright et al., Federal Practice ________________ and Procedure 3567.1, at 24 & nn.30.1-30.2 (Supp. 1995) (same), _____________ we reject it outright. In our judgment, section 1367 itself disproves appellant's hypothesis. Whatever may have been the situation 19 before the enactment of the supplemental jurisdiction statute10 it may have been possible then to detect scattered signs of implied negation, see Kitchen v. Chippewa Valley Sch., 825 F.2d ___ _______ _____________________ 1004, 1010 (6th Cir. 1987) (citing district court cases finding implied negation of pendent jurisdiction under Title VII prior to the passage of 28 U.S.C. 1367) section 1367 specifically authorizes supplemental jurisdiction "[e]xcept . . . as expressly provided otherwise by Federal statute . . . ." 28 U.S.C.  1367(a). Since the statutory text is unambiguous, and no court or commentator ever has maintained that Title VII expressly _________ negates pendent jurisdiction, there is simply no credible basis on which the statute's broad jurisdictional grant can be shortstopped in the Title VII context. One additional point is worth making. While habit or practice is by no means the barometer of jurisdictional power, we find it telling that we have not heretofore encountered, let alone embraced, the radical hypothesis advanced by the appellant. To the precise contrary, we have regularly entertained suits in  ____________________ 10Even prior to the enactment of section 1367, the case for implied negation was asthenic. See, e.g., Thompkins v. Stuttgart ___ ____ _________ _________ Sch. Dist. No. 22, 787 F.2d 439, 442 (8th Cir. 1986) (rejecting _________________ negation argument and holding that a district court "properly could have exercised jurisdiction over a state claim pendent to the . . . Title VII claim"); Catania, supra, at 796 ("Neither the _____ language nor legislative history of title VII reveals any congressional intent to negate the exercise of pendent jurisdiction over related nonfederal claims asserted against the title VII defendant."); Richard D. Freer, Compounding Confusion ______________________ and Hampering Diversity: Life After Finley and the Supplemental _________________________________________________________________ Jurisdiction Statute, 40 Emory L.J. 445, 462 (1991) (remarking ____________________ that "[m]ost courts that bothered to mention the need for a statutory basis . . . appear to have upheld jurisdiction"). 20 which plaintiffs have joined Title VII claims with pendent state- law claims and we have done so both before and after the passage of section 1367. See, e.g., Vera-Lozano, 50 F.3d at 70; ___ ____ ___________ Gallagher v. Wilton Enters., Inc., 962 F.2d 120, 121 (1st Cir. _________ ____________________ 1992) (per curiam); Conway v. Electro Switch Corp., 825 F.2d 593, ______ ____________________ 595 (1st Cir. 1987). To recapitulate, a sexual harassment claim brought pursuant to state law falls within the district court's supplemental jurisdiction when, as now, the court's original jurisdiction derives from the assertion of a Title VII claim arising out of the same facts. Thus, the court below plainly possessed the raw power to exercise supplemental jurisdiction over a claim under Puerto Rico Law 17, had one been asserted.  2. On Remand. Having determined that supplemental 2. On Remand. __________ jurisdiction would have attached had a Law 17 claim been advanced ab initio, we must further determine whether such jurisdiction __ ______ remains available on remand, given that the district court has by now slain the plaintiff's Title VII claim on the merits. Based on controlling law, we conclude that supplemental jurisdiction would be proper despite the interment of the plaintiff's foundational federal cause of action. As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims. See, ___ e.g., Gibbs, 383 U.S. at 726 ("[I]f the federal claims are ____ _____ 21 dismissed before trial, . . . the state claims should be dismissed as well."); Martinez v. Colon, ___ F.3d ___, ___ (1st ________ _____ Cir. 1995) [No. 94-2138, slip op. at 24] (affirming the dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed"). But this praxis is not compelled by a lack of judicial power. It signifies only that, "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ., 484 _____________________ U.S. at 350 n.7. In an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims. See, e.g., ___ ____ Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287-88 (6th ______ ________________________ Cir. 1992). Thus, as long as the plaintiff's federal claim is substantial, the mere fact that it ultimately fails on the merits does not, by itself, require that all pendent state-law claims be jettisoned. See, e.g., Duckworth, 780 F.2d at 656-57; Warehouse ___ ____ _________ _________ Groceries Mgt., Inc. v. Sav-U-Warehouse Groceries, Inc., 624 F.2d ____________________ _______________________________ 655, 658-59 (5th Cir. 1980). In other words, a court need not always throw out the bath water with the baby. To be sure, the exercise of supplemental jurisdiction in such circumstances is wholly discretionary. And, moreover, the district court, in reaching its discretionary determination 22 on the jurisdictional question, will have to assess the totality of the attendant circumstances. Because each case is bound to have its own distinctive profile, we are reluctant to compose a list of important elements. Instead, we cite two examples to illustrate the wide variety of considerations that may appropriately enter into the calculus. The running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction. See, e.g., Wright v. Associated Ins. Cos., 29 F.3d ___ ____ ______ ____________________ 1244, 1251 (7th Cir. 1994); Newman v. Burgin, 930 F.2d 955, 963 ______ ______ (1st Cir. 1991). Another factor to be weighed is the clarity of the law that governs a pendent claim, for a federal court may be wise to forgo the exercise of supplemental jurisdiction when the state law that undergirds the nonfederal claim is of dubious scope and application. See, e.g., 28 U.S.C. 1367(c)(1) ___ ____ (authorizing district courts to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law"); see also Moor v. County of ___ ____ ____ __________ Alameda, 411 U.S. 693, 716 (1973); Gibbs, 383 U.S. at 726 & n.15. _______ _____ We will not attempt to single out all the elements that could potentially tip the balance here. That is grist for the district court's mill. It suffices for our purposes to remark the obvious: that although the plaintiff's Title VII claim ultimately succumbed on the merits, it was colorable when brought. Consequently, the district court's power to exercise 23 discretionary supplemental jurisdiction over a putative Law 17 claim, extant at the time of trial, will remain intact on remand. C. Charting a Course. C. Charting a Course. _________________ To this point, we have held (1) that, as a general proposition, supplemental jurisdiction over state-law claims is not precluded in Title VII actions; (2) that, in this case, had proper procedures been employed, the district court could appropriately have exercised supplemental jurisdiction over a claim brought pursuant to Puerto Rico Law 17; and (3) that the district court remains empowered, in its discretion, to entertain a Law 17 claim on remand. This means, of course, that remand ranks as a viable option from our standpoint. We believe that remand is not only a viable option but also the best available course. In the first place, a hoary policy of the law favors the disposition of claims on the merits. See, e.g., HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, ___ ____ _________________________ ________________________ Inc., 847 F.2d 908, 917 (1st Cir. 1988) (discussing need to ____ consider "the policy of the law favoring the disposition of cases on the merits"). In the second place, considerations of fairness counsel in favor of a remand as opposed to a disposition by fiat. After all, a trial is a search for the truth, not merely a battle of wits between jousting attorneys. Third and perhaps most important our determination rests upon a close analysis of the nature of the decisionmaking that a remand would entail. We explain briefly. The multifaceted decision about whether to permit the 24 plaintiff to proffer a Law 17 claim and whether to exercise supplemental jurisdiction over it lies in the heartland of judicial discretion. Because the plaintiff neither pleaded nor otherwise seasonably advanced a Law 17 claim, the court may in its discretion simply deem the case concluded and enter a take- nothing judgment on the pleaded claims. In the alternative, the court may in its discretion choose to reopen the proceedings and invite the plaintiff to move, under Fed. R. Civ. P. 15(a), for leave to amend her complaint in order to assert a Law 17 claim. If that is done, the court (and the parties) will then face a series of judgment calls. For example, adjudicating the Rule 15 motion necessitates a further exercise of the court's discretion.11 See Coyne v. City of Somerville, 972 F.2d 440, ___ _____ __________________ 446 (1st Cir. 1992); Correa-Martinez v. Arrillaga-Belendez, 903 _______________ __________________ F.2d 49, 59 (1st Cir. 1990). The court will also have to determine whether it will exercise supplemental jurisdiction, another decision that is largely discretionary. See, e.g., ___ ____ Gibbs, 383 U.S. at 726 (explaining that pendent jurisdiction "is _____ a doctrine of discretion, not of plaintiff's right"); see also ___ ____  ____________________ 11We doubt that the district court, if it decides to cross this bridge, will have an easy time in passing upon a Rule 15(a) motion. Although the rule evinces a definite bias in favor of granting leave to amend, see Jamieson v. Shaw, 772 F.2d 1205, ___ ________ ____ 1208 (5th Cir. 1985), it frowns upon undue delay in the amendment of pleadings, particularly if no legitimate justification for the delay is forthcoming, see, e.g., Quaker State Oil Ref. Corp. v. ___ ____ ____________________________ Garrity Oil Co., 884 F.2d 1510, 1517-18 (1st Cir. 1989); United _______________ ______ States Inv. & Dev. Corp. v. Cruz, 780 F.2d 166, 168 (1st Cir. _________________________ ____ 1986). A host of other factors also may be relevant and may compound the decisionmaker's difficulties. See, e.g., Foman v. ___ ____ _____ Davis, 371 U.S. 178, 182 (1962) (listing several considerations). _____ 25 Newman, 930 F.2d at 963 (reviewing factors pertinent to the use ______ or withholding of supplemental jurisdiction); cf. 28 U.S.C.  ___ 1367(c)(3) (expressly authorizing a district court to decline the exercise of supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"). Given the critical role of discretion in the decisions that must be made, we think that the district court is better equipped to take the laboring oar and to determine whether the case should proceed (and if so, on what terms). As we have remarked before, "[t]he very nature of a trial judge's interactive role assures an intimate familiarity with the nuances of ongoing litigation a familiarity that appellate judges, handicapped by the sterility of an impassive record, cannot hope to match." Dopp v. Pritzker, 38 F.3d 1239, 1253 (1st Cir. 1994). ____ ________ Here, choosing not to remand would effectively ignore the district court's special competence in the realm of discretionary decisionmaking. Because we can discern no basis for displacing the trier in so peremptory a manner, we conclude that remand represents the most appropriate remedy in this instance. IV. CONCLUSION IV. CONCLUSION We need go no further. The authority of the federal courts to entertain grievances is neither autopoetic nor illimitable; it must, in all instances, be traceable to and constrained by an antecedent constitutional or statutory grant. See generally U.S. Const. art. III, 1-2; Cary v. Curtis, 44 ___ _________ ____ ______ U.S. (3 How.) 236, 245 (1845). Here, because the record reveals 26 no such mode of empowerment the district court's award rested on a claim that was never properly introduced into the case the judgment entered below cannot stand. Nonetheless, the district court continues to possess the power to entertain a properly presented claim under Puerto Rico Law 17 even at this late date. Hence, we remit the case for a more considered appraisal of this aspect of the matter. On remand, the trial court may simply bring the litigation to a close,12 or it may elect, in its discretion, to allow the plaintiff the opportunity to present and to develop such a claim, subject to any constraints imposed by the jurisprudence of Fed. R. Civ. P. 15 and 28 U.S.C. 1367. If the court pursues the latter route, it must concomitantly ensure that the parties are provided adequate discovery and "the standard prophylaxis that generally obtains at trial." Lussier v. Runyon, 50 F.3d 1103, _______ ______ 1113 (1st Cir. 1995), petition for cert. filed (U.S. June 5, ________ ___ _____ _____ 1995) (No. 94-1979). Nothing we have said in this opinion should be interpreted as an effort to suggest a result to the lower court.  ____________________ 12Should the district court opt, in its discretion, to follow this course and deny leave to amend, it may further choose to condition that order on the defendant's stipulation not to raise a statute-of-limitations defense if the plaintiff attempts to press a Law 17 claim in a Puerto Rico court. See Edwards v. ___ _______ Okaloosa Cty., 5 F.3d 1431, 1435 n.3 (11th Cir. 1993) ("When ______________ considering dismissal of pendent claims after a state statute of limitations has run, district courts commonly require the defendants to file a waiver of the statute of limitations defense as a condition of dismissal."); Duckworth, 780 F.2d at 657 _________ (conditionally remanding pendent claim). 27 Vacated and remanded. No costs. Vacated and remanded. No costs. ____________________ ________ 28