**METLIFE CAPITAL CORPORATION,**
**Plaintiff,**

v.

**WATER QUALITY INSURANCE**
**SYNDICATE, et al, Defendant/**
**Third Party Plaintiffs,**

v.

**Travelers Indemnity Company**
**of Illinois, et al., Third**
**Party Defendants.**

**No. Civ. 97–2615(HL).**

United States District Court,
D. Puerto Rico.

March 20, 2002.

Antonio M. Bird, Jr., Bird, Bird & Hestres, San Juan, PR, Heidi S. Downey, Blogle & Gates, Seattle, WA, John W. Fried,

John P. Winsbro, Fried & Epstein, New York City, for Metlife Capital Corp.

John M. Woods, Cliona A. Jennings, Joseph G. Grasso, Thacher Proffitt & Wood, New York City, Keith A. Graffam, Graffam & Biaggi, San Juan, PR, for Water Quality Ins. Syndicate.

Dario Rivera-Carrasquillo, San Juan, PR, for American Home Assurance Co.

Thomas M. Rittweger, Nicoletti Hornig & Sweeney, New York City, Harry a. Ezratty, San Juan, PR, for Continental Ins. Co., Insurance Co. of North America

Juan A. Ramos-Diaz, San Juan, PR, for Reliance Ins. Co.

Francisco J. Amundaray-Rodriguez, San Juan, PR, for Utica Mut. Ins. Co.

### OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Defendant Westchester Fire Insurance Company's ("Westchester") motion to dismiss for lack of subject matter jurisdiction. *See* Dkt. nos. 213 & 232. This action arose as a result of an oil spill that occurred off the coast of Puerto Rico. Plaintiff Metlife Capital Corporation ("MCC") owned a tugboat known as the *Emily S,* which it leased to the Bunker Group ("Bunker"). On January 7, 1994, while the *Emily S* towed a barge known as the *Morris J. Berman,* the tow line snapped and the *Morris J. Berman* went aground on a reef a hundred yards offshore of Punta Escambron spilling close to 750,000 gallons of oil into the ocean. Not surprisingly, this event engendered the filing of a myriad of lawsuits including this one.

Although Westchester does not specify in its motion under what section of Rule 12(b) it is proceeding, the Court will assume it to be under Rule 12(b)(1). The standard to be used in a Rule 12(b)(1)

motion depends on the nature of the movant's argument. *See Valentin v. Hospital Bella Vista,* 254 F.3d 358, 362–64 (1st Cir. 2001); *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir.1996). When the accuracy of the jurisdictional facts asserted by the plaintiff are at issue, Rule 12(b)(1) permits differential factfinding. *Valentin,* 254 F.3d at 363. The plaintiff's jurisdictional averments are entitled to no presumptive weight, and the Court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. *Id.* In doing so, the Court may consider extrinsic evidence, may weigh the proof, and may draw reasonable inferences. *Id.* at 363–64. Unlike in a motion for summary judgment, the Court is not obligated to view the facts in the light most favorable to the non-movant. *Id.*

Initially, MCC commenced this action in 1997 against its insurer, Water Quality Insurance Syndicate ("WQIS") and its subscriber insurers. Specifically, MCC sought a declaratory judgment against WQIS for the costs and expenses MCC incurred due to the investigation and the defense of claims asserted against MCC due to its ownership of the *Emily S.* Jurisdiction for this action was based on diversity and admiralty since WQIS's insurance policy was an ocean marine policy insuring the risks related to ocean-going vessels, including the *Emily S.* In April, 1998, WQIS filed a third party complaint against Travelers Indemnity Company ("Travelers"), an Illinois corporation, and Westchester, a New York corporation, seeking indemnity for any liability it might have to MCC.[1]

In August, 1998, General Electric Capital Corporation ("GE") purchased the stock of MCC from Metropolitan Asset Management Corporation ("MAMCO"), a subsidiary of New York based Metropolitan Life Insurance Company ("Metlife").[2] As a condition of the sale, MAMCO retained certain rights and responsibilities with respect to all *Emily S* related litigation. Specifically, MAMCO retained the sole and exclusive right to conduct and direct the litigation, and in return, GE agreed to pay MAMCO any proceeds it receives in connection with the litigation from insurance, indemnity obligations, or otherwise. Moreover, as a result of the sale, MCC's name was changed to General Electric Business Asset Funding Corporation, but it was not dissolved. This litigation, however, continued in MCC's name.

In June, 1999, MCC filed its First Amended Complaint asserting claims directly against Travelers and Westchester.[3] Both the Travelers and Westchester policies insured Metlife and its subsidiaries, which included MCC. In the Complaint, MCC claimed that under the Travelers' commercial general liability policy, Travelers was obligated to defend and indemnify MCC for all sums MCC would be obligated to pay up to one million dollars ($1,000,000) for each occurrence. The Westchester policy, according to MCC, insured MCC under a commercial umbrella policy up to ten million dollars ($10,000,000) for each occurrence in excess of the Travelers' one million dollar policy limit.[4] MCC avers that it made a proper demand to both Travelers and Westchester to honor their obligations, but both refused and thereby breached their contracts.

---

**1.** Dkt. no. 226, exh. 2.

**2.** Stock Purchase Agreement, Dkt. no. 226, exh. A.

**3.** Dkt. no. 59.

**4.** Dkt. no. 226, exh. 5.

As of this point, all of MCC's claims against WQIS have been resolved.[5] The claims against all the subscriber insurers have also been resolved. All that remains in this action are MCC's indemnity and obligation to defend claims against Travelers and Westchester. Westchester has filed a motion to dismiss and a motion in further support of its motion to dismiss arguing that this Court lacks subject matter jurisdiction for various reasons. The Court will address each argument separately.

## DISCUSSION

■ Westchester first avers that MCC's remaining declaratory claims do not fall within the Court's supplemental jurisdiction. The statute that provides for supplemental jurisdiction, 28 U.S.C. § 1367, reads in relevant part,

> [I]n any civil action which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

This statute, in essence, codified the reasoning articulated by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Supreme Court instructed that supplemental jurisdiction exists when the relationship between the federal and non-federal claim is such that the entire action before the court comprises but one case. *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130. In order for the Court to exercise supplemental jurisdiction, both federal and non-federal claims must derive from a "common nucleus of operative fact." *Id.* Not only should they derive from the same factual nucleus, the claims should also be of such a nature that it would only be logical to try them in one judicial proceeding.

In its motion, Westchester relies primarily on the Supreme Court case *Owen Equip. & Erection Co. v. Kroger* for its argument that the Court cannot exert supplemental jurisdiction over MCC's claims against it. 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In *Owen*, an Iowa widow brought a wrongful death action in diversity against a Nebraska power company after her husband was electrocuted after passing by a steel crane that had been placed near power lines. The power company impleaded Owen Equipment and Erection Company, the crane owner and operator. At that point, the widow also added Owen as an additional defendant. After the suit was dismissed against the power company, Owen revealed that it maintained its principal place of business in Iowa, and as such, filed a motion to dismiss on the ground that diversity jurisdiction was lacking. The district court denied the motion, and the circuit court affirmed.

The Supreme Court reversed and held that supplemental jurisdiction could not support the widow's case against third-party defendant Owen. *Id.* at 376–77, 98 S.Ct. 2396. The Court held that in a case based solely on diversity, a plaintiff cannot circumvent the requirement of complete diversity through the use of supplemental jurisdiction in a direct action against a non-diverse third party defendant on purely state-law claims. *Id.* at 376, 98 S.Ct.

---

5. In May, 2000, the Court entered partial summary judgment in favor of MCC on its claims against WQIS. *See* Dkt. no. 156. The remaining claims were settled between MCC and WQIS in December, 2000. The Court entered partial judgment on those claims in February, 2001. *See* Dkt. no. 196.

2396. To that end, the Court reasoned that plaintiff's claim against Owen was entirely separate from her original claim against the power company in that Owen's liability to the plaintiff was not at all dependent upon whether or not the power company was also liable. *Id.* That is to say, that the claims lacked a logical dependence that would require them to be tried together. In that respect, the Court characterized the plaintiff's claim against Owen as being separate from the claim against the power company, and as such it required an independent basis for jurisdiction.

■ Citing *Owen,* Westchester avers that supplemental jurisdiction should not attach. It argues that MCC's claims against WQIS and Westchester are based on different theories of liability because the coverage claims concern two entirely different policies and because they do not arise from a common nucleus of operative fact. However, *Owen* is inapposite to this case. In *Owen,* the Supreme Court addressed its principal concern that to allow a plaintiff to circumvent the requirement of complete diversity in its direct action against a non-diverse party would be to flout Congressional intent and would serve as an unjustifiable extension of supplemental jurisdiction to a plaintiff's cause of action against a citizen of the same state in a diversity suit. *Id.* at 377, 98 S.Ct. 2396. That is not the case here.

In this case, Westchester is not a non-diverse party. Rather, it is undisputed that MCC and Westchester are citizens of different states, and the amount in controversy requirement is met. Unlike the case in *Owen,* the action between MCC and Westchester is supported by an independent jurisdictional basis in the form of diversity jurisdiction. The Court, therefore, need not exercise supplemental jurisdiction since it has original jurisdiction over this matter.

Westchester, however, argues that since Metlife is the party that should proceed with this case, diversity is also lacking. According to Westchester, MCC lost its status as the real party in interest the moment it was sold to GE. Westchester asserts that since Metlife retained both the substantive rights and liabilities of this litigation, it is the real party in interest and should be substituted into this action for MCC. Moreover, Westchester asserts that Metlife is also an indispensable party without whom this litigation cannot continue. If Westchester's argument is correct, and Metlife were added or substituted in as a necessary party, diversity would be destroyed since both Westchester and Metlife are citizens of New York.

■ There are several problems with Westchester's averments, most significant of which is Westchester's mis-characterization of MCC's sale to GE. As indicated by the Stock Purchase Agreement,[6] MCC was sold by MAMCO, a subsidiary of Metlife, and not by Metlife itself. Hence, it was MAMCO that retained the rights and liabilities to this action. Therefore, MAMCO not Metlife would be the real party in interest, and as MAMCO is a citizen of Delaware, its addition would not affect diversity.

Yet, even assuming, *arguendo,* that Metlife had been the seller of MCC, there would still be no need to join or substitute it into this action. The crux of Westchester's argument that Metlife is both the real party in interest and an indispensable party raises an interesting question as to the interplay between Federal Rules of Civil Procedure 17, 19, and 25. These rules prescribe guidelines for allowing substitu-

---

**6.** Dkt. no. 226, exh. A.

tions and adding parties to a suit. Rule 17(a) mandates that every action be prosecuted in the name of the real party in interest. Rule 19 calls for the joinder or substitution of persons needed for just adjudication. Rule 25(c) speaks to a situation in which there is "any transfer of interest" during the pendency of an action. Rule 25(c), however, applies only to transfers that occur after the filing of an action. Moore's Federal Practice § 25.30 (3d ed.) In a situation where the transfer occurs prior to the commencement of the suit, Rules 17 and 19 are applicable. *Id.*

In the instant situation, Westchester asserts that MCC transferred its interest in this litigation prior to the commencement of the action at hand. The original action between MCC and WQIS was filed in 1997. The sale of MCC occurred in August, 1998. However, MCC did not file its amended complaint asserting claims directly against Westchester until June, 1999. As such, Westchester avers that since the transfer occurred prior to the filing of the amended complaint, the Court should evaluate this issue under Rule 17. Because the filing of the amended complaint marked the commencement of the suit between MCC and Westchester, the Court will follow Rule 17.[7]

Even though the Court agrees with Westchester that Rule 17 is appropriate in this instance, Westchester's argument that MCC should be substituted in as the real party in interest still does not prevail. By its own terms, Rule 17(a) does not mandate the formal substitution or joinder of the real party in interest if that party ratifies the commencement of the action. By ratifying, the real party in interest

authorizes the continuation of an action brought by another and agrees to be bound by the outcome, thereby eliminating the risk of multiple litigation. 6A Charles Alan Wright & Arthur Miller, Mary Kay Kane, Federal Practice and Procedure § 1555 (2d 1987). In such a situation, the case can proceed with the party that commenced the action.

Here, Metlife and MAMCO have ratified the continuation of this case in MCC's name. As indicated by the Stock Purchase Agreement entered into between MAMCO and GE, MAMCO retained exclusive control over "conducting, defending and prosecuting" on behalf of MCC all claims arising out of the events involving the *Emily S.*[8] As the sole master over the course of this litigation, MAMCO has clearly decided to proceed in the name of MCC. Had MAMCO desired to be substituted in or formally joined, it has certainly had the power and opportunity to have requested the Court for such. In choosing not to do so, MAMCO has ratified the continuation of this action as is.

Nevertheless, Westchester further argues that Metlife is an indispensable party and should be added to this action under Rule 19. This argument, however, also fails. Rule 19(a) reads in part,

> A person . . . shall be joined as a party in the action if . . . (2) the person claims an interest . . . . and is so situated that the disposition of the action in the person's absence may . . . (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obli-

7.  Rule 17 reads in relevant part:
    No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratifi-

cation of commencement of the action by, or joinder or substitution of, the real party in interest.

8.  Dkt. no. 226, exh. A, § 5.6(a).

gations by reason of the claimed inter-est.

The purpose of Rule 19 is to bring before the court all persons whose joinder would be desirable for a just and complete adjudication of an action. 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1604.

■ There is no formula for determining when a particular nonparty must be joined under Rule 19. *Id.* The Court should make its decision "in terms of the general policies of avoiding multiple litigation, [and] providing the parties with complete and effective relief in a single action." *Id.* The Court does, however, possess a great deal of discretion in determining whether "in equity and good conscience" the action should proceed with the parties already before it. FED.R.CIV.P. 19(b).

Westchester contends that it may be subject to a substantial risk of being sued by Metlife if it is not joined to this case. Moreover, Westchester also argues that Metlife's presence is necessary so its officers can be compelled to testify if this case reaches the trial stage as its employees are not within a 100 miles of Puerto Rico. This second concern is not significant as MCC has committed itself to accepting service on behalf of current Metlife officers, and assures the Court that it will not challenge any subpoena under the 100 mile rule.

As for the risk of multiple litigation, the Court finds that there is nothing before it to suggest that there is a substantial likelihood that Metlife would file a separate suit. *Coastal Modular Corp. v. Pennsylvania Manufacturers Ins. Co.,* 695 F.2d 1102, 1108 (4th Cir.1980) (declining to join a nonparty under Rule 19 because there was not a substantial risk that the nonparty would file a suit only a theoretical one). As evidenced by the Stock Purchase

Agreement, MCC and MAMCO have agreed that the responsibility for litigating this matter as well as any benefit, including any indemnification amount awarded, derived from this litigation is retained solely by MAMCO and Metlife.[9] It is clear from this agreement that MAMCO and Metlife have taken the necessary steps to protect their own interests in this litigation. As such, there is no apparent reason for the Court to believe that Metlife would file a separate suit, and Westchester has not provided the Court with any convincing reason or evidence to suggest otherwise. Therefore, the joinder of Metlife to this action is unnecessary.

■ Notwithstanding the foregoing, even if diversity jurisdiction were not present, the Court could still exercise supplemental jurisdiction over the remaining claims. It is undisputed that MCC's original action against WQIS fell under this Court's admiralty jurisdiction since MCC sought damages for breach of a maritime insurance contract. *Acadia Ins. Co. v. McNeil,* 116 F.3d 599 (1st Cir.1997) (stating that federal admiralty jurisdiction attaches in actions based upon marine insurance policies). In cases based on admiralty, the First Circuit has recognized that supplemental jurisdiction attaches over non-federal claims against an additional party that arise out of a common nucleus of operative facts with the admiralty claim and where the resolution of these factually connected claims in a single proceeding would advance the interests of conserving judicial resources and fairness to the parties. *Ponce Federal Bank, F.S.B. v. Vessel Lady Abby,* 980 F.2d 56, 58 (1st Cir.1992); *Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292, 1295 (2d Cir.1990).

9. Dkt. no. 226, exh. A, § 5.6(h).

Applying this test, the Court notes that there is a commonality between MCC's admiralty claims and its state-law based insurance contract claims. Both present insurance coverage questions, and both were triggered by the grounding of the *Morris J. Berman* and the subsequent oil spill. As a consequence, it would seem eminently fair to decide both in a single judicial proceeding. The Court, therefore, would have been well within its rights to validly exercise its jurisdiction over all related claims had diversity jurisdiction not been present to support this action.

Westchester also argues, in the alternative, that had the claims against it fallen within this Court's supplemental jurisdiction, the Court would have had to decline exercising its jurisdiction since all the federal claims have been resolved prior to trial and all that remains are non-federal claims. As a general principle, the disposition of a plaintiff's federal claims at the early stages of suit, well before trial usually obligates a court to dismiss without prejudice any supplemental state-law claims. *See e.g., Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130; *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995). This praxis, however, is neither mandatory nor absolute, nor does it dislodge the Court of its judicial discretion. *Rodriguez,* 57 F.3d at 1177. In deciding whether to retain jurisdiction over supplemental claims after the elimination of all federal law claims, a court must balance the factors of judicial economy, convenience, fairness, and comity. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Usually, consideration of these factors will point toward declining to exercise jurisdiction solely over remaining state-law claims. *Id.* However, in certain situations, a federal court may retain jurisdiction over state-law claims notwithstanding the resolution of all

foundational federal claims. *Rodriguez,* 57 F.3d at 1177. In making its jurisdictional determination, a court should assess the totality of the attendant circumstances. *Id.*

In considering this issue, the Court found several examples of cases where courts retained supplemental jurisdiction over state-claims after considering judicial economy, convenience, and fairness. *Batiste v. Island Records, Inc.,* 179 F.3d 217, 226 (5th Cir.1999) (finding that court should have exercised its supplemental jurisdiction over state-law claims where claims did not involve any novel or complex issues of state law, case had been pending for three years, and trial was less than a month away); *Ametex Fabrics, Inc. v. Just in Materials, Inc.,* 140 F.3d 101, 105 (2d Cir.1998) (affirming the exercise of supplemental jurisdiction where discovery complete and settlement conference had already been held); *Rodriguez,* 57 F.3d at 1177–78 (finding that supplemental jurisdiction would be proper despite the internment of all foundational federal claims). These cases clearly delineate the broad level of discretion courts possess in making such determinations.

Here, the insurance contract interpretation issues that remain do not present novel or complex issues of law. This case has been ongoing for almost five years, and the remaining action has been pending for three years. More significantly, the discovery in this case has been substantial and has created a record of close to seventeen volumes comprised of hundreds of documents, correspondence, contracts, and sworn affidavits. Moreover, the Court has expended a great deal of time and resources over the course of the last five years, and to dismiss or remand this case to a state or local court at this point would be a clear violation of the principle of judicial economy as it would create redun-

dancy. The Court is intimately familiar with this case, and it is this familiarity with the record and with MCC's claims that would weigh most heavily in favor of the Court retaining jurisdiction. In light of these factors, and consistent with the principles of judicial economy, convenience, and fairness, the Court could and would have exercised its discretion and retained the non-federal claims against Westchester under supplemental jurisdiction in the interest of preserving scarce judicial resources.

WHEREFORE, as this action is supported by diversity jurisdiction, and there being no substantial reason to join Metlife as a party, the Court hereby **DENIES** Westchester's motions to dismiss. Dkt. nos. 213 & 232.

**IT IS SO ORDERED.**