**Bruce R. ALGER, Plaintiff,**

v.

**GANICK, O'BRIEN & SARIN, Massachusetts Higher Education Assistance Corporation, Defendants.**

**No. CIV. A. 96–11901–MBB.**

United States District Court, D. Massachusetts.

Feb. 9, 1999.

Matthew Cobb, Law Firm of Matthew Cobb, Boston, MA, for Bruce R. Alger, Plaintiff.

Lawrence E. O'Brien, Lawrence E. O'Brien, Ganick, O'Brien & Sarin, Kevin J. McCaughey, Ganick, O'Brien & Sarin, Dorchester, MA, J. Christopher Sheehan, John D. Fitzpatrick, Fitzpatrick & WarrenBrand LLP, Boston, MA, for Ganick, O'Brien & Sarin, Massachusetts Higher Education Assistance Corporation, Defendants.

### MEMORANDUM AND ORDER RE: DEFENDANT GANICK, O'BRIEN'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (DOCKET ENTRY #31); MOTION TO DISMISS OF DEFENDANT MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION (NO DOCKET ENTRY NO. ASSIGNED)

BOWLER, United States Magistrate Judge.

Defendant Ganick, O'Brien & Sarin ("GOS"), a Massachusetts law firm, moves to dismiss this debt collection action for lack of subject matter jurisdiction and failure to state a claim for relief. (Docket Entry #31). Plaintiff Bruce R. Alger ("Alger") a Massachusetts resident, opposes the motion. (Docket Entry #36). Defendant Massachusetts Higher Education Assistance Corporation ("MHEAC"), a corporate body created by state statute to assist students in obtaining higher education in the medical and dental fields, also seeks dismissal for lack of subject matter jurisdiction and failure to state a claim for relief. (Motion to Dismiss of Defendant Massachusetts Higher Education Assistance Corporation, No Docket Entry No. Assigned). Alger also opposes this motion and incorporates by reference his opposition to GOS' motion to dismiss. (Docket Entry #41).

### PROCEDURAL BACKGROUND

Alger initially filed this action on September 20, 1996, a determinative date for pur-

poses of his federal claim against GOS under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq.* In April 1997 GOS filed its first motion to dismiss which characterized the first amended complaint[1] as time barred under Rule 12(b)(1), Fed.R.Civ.P. (Docket Entry # 9). In February 1998 the district judge allowed GOS' first motion to dismiss (Docket Entry # 9) without prejudice to Alger refiling the complaint to allege additional facts to establish subject matter jurisdiction over GOS. (Docket Entry # 20). The first amended complaint set forth only one count against GOS under the FDCPA.[2]

As explained in the February 1998 Order, the FDCPA contains a jurisdictional, one year statute of limitations, 15 U.S.C. § 1692k(d) ("section 1692k(d)"). Examining the first amended complaint, the district judge determined that Alger failed to allege any conduct on the part of GOS occurring after September 20, 1995, which would constitute a violation of the FDCPA. The district judge focused on the actions of GOS as opposed to the effect of GOS' actions upon Alger, i.e., Alger's arrest under a capias after September 20, 1995. Quoting case law, the district judge found that GOS' "last opportunity to comply with the Act" was GOS' request for a new capias transmitted to the Lowell District Court on August 25, 1995, an easily determinable date. Significantly, the district judge found that any claims based on the FDCPA "that occurred before September 20, 1995 are time-barred." As the law of this case, this necessary determination now guides this court in examining the merits of Alger's renewed FDCPA claim against GOS.

After the district judge dismissed the FDCPA count against GOS without prejudice, Alger filed a motion for leave to file a second amended and supplemental complaint. (Docket Entry # 23). The district judge allowed the motion due to the absence of an opposition. GOS and MHEAC presently seek dismissal of this second amended and supplemental complaint.

In large part, the second amended and supplemental complaint contains state law claims filed under this court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Under the Judicial Improvements Act of 1990, supplemental jurisdiction, which encompasses claims involving "the same nucleus of operative facts," *Roche v. John Hancock Mutual Life Insurance Company,* 81 F.3d 249, 256 (1st Cir.1996), automatically extends to claims against additional parties. 28 U.S.C. § 1367(a).

The single federal count in the second amended and supplemental complaint is Count I against GOS under the FDCPA. Count II against GOS and MHEAC alleges a violation of Massachusetts General Laws chapter 93, section 49 ("chapter 93"). Counts III and IV allege violations of Massachusetts General Laws chapter 93, section 9 ("chapter 93A") and the Massachusetts Civil Rights Act, Massachusetts General Laws chapter 12, sections 11H and 11I (the "MCRA") on the part of MHEAC. Counts V through VIII respectively set forth claims against MHEAC for abuse of process, libel and slander and intentional infliction of emotional distress.

## I. *DEFENDANT GANICK, O'BRIEN'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (DOCKET ENTRY # 31)*

GOS moves to dismiss the FDCPA count on the basis of failure to state a claim for relief under Rule 12(b)(6), Fed.R.Civ.P. If this court dismisses the FDCPA count, GOS asserts that this court lacks subject matter jurisdiction over the remaining state law claims under Rule 12(b)(1), Fed.R.Civ.P. In the event this court does not dismiss the FDCPA count, GOS moves to dismiss the chapter 93 count under Rule 12(b)(6), Fed. R.Civ.P.

---

**1.** Alger filed a first amended complaint as a matter of right in December 1996.

**2.** Alger brought the remaining four counts in the first amended complaint against MHEAC under state law.

## FACTUAL BACKGROUND [3]

In 1982 Alger obtained two student loans from a private bank in the total amount of $5,000. The Student Loan Marketing Association, commonly known as Sallie Mae,[4] acquired the loans at an undetermined time. Sallie Mae thereafter sold the loans to MHEAC.

In March 1985 MHEAC obtained a judgment against Alger in Boston Municipal Court in the amount of $6,238.22. Alger never received notice of any hearing or related court date leading to the judgment.

From 1985 to 1990 Alger forwarded payments of $62.53 each month to GOS. In 1990, however, Alger became unemployed. Consequently, from 1990 to 1993, Alger made only 22 monthly payments to GOS.

In 1993 GOS applied for supplementary process in the Lowell District Court.[5] In August 1993 Alger received a supplementary process summons to appear on September 20, 1993, in the Lowell District Court for an examination. After receiving the summons, Alger telephoned GOS and spoke with an attorney who refused to provide him with an accounting of the debt. Letters from GOS to Alger indicated a debt of $2,274.04 whereas information Alger obtained from MHEAC indicated a debt of $1,447.

At the September 20, 1993 hearing in Lowell District Court, the court ordered Alger to pay the debt and directed GOS and Alger to "work out the amount." The GOS attorney and Alger conferred but Alger refused to sign the form unless the attorney crossed out the $2,355.35 amount owed, which Alger disputed, and allowed Alger to send the monthly payments directly to MHEAC. The attorney agreed to Alger's requests. After Alger signed the agreement and left the courthouse, however, the GOS attorney added the name of a GOS attorney as the designated recipient of the payments and filed the agreement with the court.

In October 1993 Alger began making monthly payments of $50 directly to MHEAC. He proceeded to make additional payments in a timely manner and notified GOS of each payment. Notwithstanding Alger's payments, in January 1994 GOS sent a letter to Alger informing him that he was "several payments in arrears."

In August 1994 GOS obtained a capias for Alger's arrest from the Lowell District Court. In October 1994 GOS wrote to Alger informing him that he failed to appear in court and that, as a result, "the court has defaulted you and issued a capias for your arrest." Upon speaking with the clerk of the Lowell District Court, Alger determined there was no court hearing and the court had not issued a default.

On December 7, 1994, January 23, 1995, and April 3, 1995, GOS transmitted additional letters to Alger. The January letter included a statement that Alger was in arrears even though he had been making timely payments to MHEAC and advising GOS of the payments. The April letter represented that

---

**3.** The following summary applies to MHEAC's motion to dismiss under Rule 12(b)(1), Fed. R.Civ.P., as well as to GOS' Rule 12(b)(6) motion to dismiss the FDCPA claim. Review of a motion to dismiss for lack of subject matter jurisdiction "is similar to that accorded a dismissal for failure to state a claim pursuant to Rule 12(b)(6)." *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.), *cert. denied,* 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995); (Docket Entry # 9). Under Rule 12(b)(6), Fed.R.Civ.P., this court draws all reasonable inferences in Alger's favor and accepts as true the factual allegations in the second amended and supplemental complaint. *See Vartanian v. Monsanto Company,* 14 F.3d 697, 700 (1st Cir.1994). Under a Rule 12(b)(1) motion decided on the pleadings, this court liberally construes the second amended and supplemental complaint and treats "all well-pleaded facts as true, according the plaintiff the

benefit of all reasonable inferences." *Murphy v. United States,* 45 F.3d at 522, (Docket Entry # 9).

**4.** Sallie Mae is a private corporation created by Congress to facilitate the secondary market for federally insured student loans. 20 U.S.C. § 1087–2(a). Sallie Mae has the power to purchase and resell federally insured student loans. 20 U.S.C. § 1087–2(d)(1).

**5.** Supplementary process under Rule 4.3 of the Massachusetts Rules of Civil Procedure is a common means whereby a judgment creditor collects monies owed under a judgment. *See generally* Joseph R. Nolan, 9A *Massachusetts Practice* (1992) §§ 1131–1135 (describing supplementary process including the application to the court, issuance of the summons to appear and the court's examination of the debtor).

GOS had been instructed to present the capias to a sheriff unless Alger contacted GOS within five days. According to Alger, GOS had not been given these instructions.[6]

In June 1995 Alger received a letter from a process server. The letter stated that "our office" was in possession of a capias for Alger's arrest. The letter further advised Alger to contact the office and establish a mutually agreeable court date.

On August 25, 1995, GOS transmitted a letter to Lowell District Court requesting a new capias due to the expiration of the previous capias.[7] The court issued the new capias on September 19, 1995.

Turning to the events occurring after September 20, 1995, on October 2, 1995, GOS falsely informed the process server that Alger had not been making the required payments to MHEAC and falsely stated that the outstanding debt was $1,500.65. GOS then instructed the process server to notify Alger about the outstanding debt. On October 8, 1995, Alger received another letter from the process server directing Alger to contact the process server's office to arrange a court date. The letter advised Alger that if he did not respond, the court would set a date and, if Alger failed to appear, the process server would contact the police for assistance. The letter concluded with the entreaty not to "make an arrest necessary ."[8]

In November 1995 Alger contacted MHEAC. MHEAC informed him that his outstanding balance was only $899.25, less than the amount claimed by GOS. Alger then sent MHEAC a check in the amount of $899.25, writing on the face of the check, "Account Paid in Full: Final Payment to M.H.E." MHEAC cashed the check in late November 1995.

Notwithstanding this payment, the process server sent Alger a notice to appear in Lowell District Court on November 28, 1995, to avoid arrest. Alger contacted MHEAC which refused to provide him with a writing evidencing satisfaction of the debt.

On November 28, 1995, Alger appeared in Lowell District Court and was arrested pursuant to the capias obtained by GOS.[9] Before attending the hearing, Alger told GOS Attorney Ronald Shufrin ("Attorney Shufrin") that he had paid the debt in full. He also provided Attorney Shufrin with documentation evidencing the payment of the debt in full.

The Lowell District Court continued the hearing until December 19, 1995. Prior to the December 1995 hearing, Alger again met with Attorney Shufrin and showed him documentation of Alger's payments.[10] At the hearing, Attorney Shufrin falsely stated to the court that Alger had not "made a payment in three years." Attorney Shufrin repeated this conduct at an April 8, 1996 hearing in Lowell District Court.[11] The court dismissed the supplementary process action because MHEAC and GOS had not given Alger an accounting of the debt.

By letter dated September 25, 1996, MHEAC notified Alger that it would collect the remainder of the debt through an offset of Alger's state income tax refund. Thereaf-

---

**6.** Alger characterizes the April letter as a "wrongful arrest threat."

**7.** In the February 1998 Order, the district judge considered this act as an alleged violation of the FDCPA as opposed to the subsequent issuance of the capias or the arrest pursuant thereto. (Docket Entry # 9).

**8.** Alger describes the October 1995 letter as the "fourth threat of arrest." The second amended and supplemental complaint refers to the process server as the agent of GOS and MHEAC.

**9.** As determined by the district judge, Alger's arrest resulted from GOS' August 25, 1995 request for a new capias. Accordingly, it was GOS' act in obtaining the capias as opposed to Alger's subsequent arrest which constitutes the

relevant date for applying the FDCPA's one year limitations period.

**10.** Alger's conversations with Attorney Shufrin prior to the November 28 and December 19, 1995 hearings, set forth in paragraphs 67 and 68 of the second amended and supplemental complaint, were not contained in the first amended complaint.

**11.** Attorney Shufrin's false statements to the Lowell District Court at the December 19, 1995 and April 8, 1996 hearings, to wit, that Alger had not made payments on the outstanding debt, constitute new allegations. These new allegations were not set forth in the first amended complaint which the district judge dismissed without prejudice.

ter, the Massachusetts Department of Revenue offset a portion of Alger's refund and transferred the funds to MHEAC. In another letter one year later, MHEAC informed Alger that the United States Department of Education would request an offset of any federal payments made to Alger in the future.

On October 8, 1996, Alger's attorney sent a chapter 93A demand letter, through GOS, to MHEAC. On November 22, 1996, GOS falsely notified Alger by letter that, "[W]e have not received payment on your Massachusetts Higher Education Assistance Case." In particular, the letter advised Alger that he owed a $50.00 payment "PER COURT ORDER."

### DISCUSSION

In moving to dismiss this action, GOS initially focuses on the FDCPA claim. To the extent that this claim exists, it must arise from new allegations in the second amended and supplemental complaint setting forth actions of GOS after September 20, 1995, that would constitute a violation of the FDCPA. (Docket Entry # 9, pp. 4–5).

Citing *Heredia v. Green*, 667 F.2d 392 (3rd Cir.1981), GOS argues that the process server's actions cannot give rise to a claim due to the exemption afforded under section 1692a(6)(D).[12] This argument, however, misperceives the nature of the exemption.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA creates a private right of action against "any debt collector." 15 U.S.C. § 1692k. The FDCPA's definition of a "debt collector" therefore plays a central role in defining the reach of the statute.

Section 1692a(6) broadly defines a "debt collector" as "any person ... who regularly collects or attempts to collect ... debts." 15 U.S.C. § 1692a(6). Section 1692a(6)(D) then exempts individuals who attempt "to serve legal process on any other person in connection with the judicial enforcement of any

debt" from this broad definition of a "debt collector." 15 U.S.C. § 1692a(6)(D). The section also exempts officers or employees "of the United States or any State to the extent that collecting ... any debt is in the performance of his official duties." 15 U.S.C. § 1692a(6)(C).[13]

■ GOS relies on the exemption for individuals who serve legal process as a means to exempt itself from liability under the act for the actions of the process server. The exemptions, however, operate to exclude those individuals who fall within their reach from liability under the act because they are not "debt collectors." Contrary to GOS' argument, however, the exemptions do not exclude the actions of third persons such as GOS who utilize these exempt individuals to violate the act.

First, such a result is incongruous with the nature of liability imposed in section 1692d. This section prescribes a "debt collector" from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Under GOS' argument, a debt collector who instructs a service processor to engage in abusive conduct under section 1962d is shielded from liability from the natural consequences of his act.

Second, numerous courts utilize agency principles to make a principal vicariously liable for the acts of his authorized or apparent agent under the FDCPA. *See Randle v. GC Services, L.P.*, 25 F.Supp.2d 849, 851 (N.D.Ill.1998); *Ditty v. CheckRite, Limited, Inc.*, 973 F.Supp. 1320, 1333–1334 (D.Utah 1997); *Farber v. NP Funding II L.P.*, 1997 WL 913335 at * 2–3 & n. 4 (E.D.N.Y. Dec.9, 1997); *Newman v. Checkrite California, Inc.*, 912 F.Supp. 1354, 1369–1372 (E.D.Cal.1995); *Taylor v. Checkrite, Limited*, 627 F.Supp. 415, 416–417 (S.D.Ohio 1986); *West v. Costen*, 558 F.Supp. 564, 573 & n. 2 (W.D.Va. 1983). The alleged facts support the finding that the process server acted as GOS' agent in notifying Alger of the $1,500.65 debt.

---

12. This court assumes that GOS' reference to section "1692(6)(D)" in its brief is a typographical error.

13. Only the latter exemption was at issue in *Heredia*.

■ Section 1692e makes it unlawful for a "debt collector," such as GOS, to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The section then sets forth a non-exclusive list of prohibited conduct. *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 260 (8th Cir. 1992). Section 1692e(2) expressly prescribes making a "false representation of . . . the . . . amount . . . of any debt." 15 U.S.C. § 1692e(2). According to the second amended and supplemental complaint, GOS falsely informed the process server that Alger owed $1,500.65 on the outstanding loan. The process server then included this incorrect amount in the notice which Alger received on October 8, 1995. (Docket Entry # 29, ¶ 55). Alger therefore sets forth a claim that GOS violated section 1692e(2).

■ Similarly, Alger also sets forth a claim against GOS under section 1692f(1) arising out of the process server's October 1995 notice to Alger. Section 1692f prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The section then lists examples of such unfair or unconscionable means. This list of prescribed conduct includes the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). Attempting to collect the false "past due balance of $1,500.65" (Docket Entry # 29, ¶ 55) by instructing the process server to notify Alger that he owed this incorrect amount adequately alleges a violation of section 1692f(1). *See Sandlin v. Shapiro & Fishman*, 919 F.Supp. 1564, 1566 & 1568 (M.D.Fla.1996). Accordingly, GOS' argument that the actions of the process server cannot give.rise to an FDCPA claim against GOS is unavailing.

GOS next contends, in relation to the statements made in open court by Attorney Shufrin, that the FDCPA only prescribes intentional misconduct. GOS asserts that Alger has the burden to establish that the prohibited statements were intentionally false. According to GOS, because Attorney Shufrin's in-court statements were not know-

ingly or intentionally false, GOS cannot be liable under the FDCPA.

■ To support its theory that the FDCPA reaches only knowing or intentional conduct, GOS cites two cases, *Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459 (M.D.La. 1996), and *Simmons v.. Miller*, 970 F.Supp. 661 (S.D.Ind.1997). First and foremost, however, GOS' theory makes the defense expressly set forth in section 1692k(c) superfluous. *See Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64, 67 (1st Cir.1998) (interpreting provisions of FDCPA and recognizing that construction would render provision "impermissibly superfluous"). Section 1692k(c) places the burden squarely upon GOS to show that the violation was not intentional. This section provides, in pertinent part, that, "A debt collector may not be held liable . . . if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

■ Furthermore, even if the FDCPA requires a showing of intentional or knowing conduct, the facts sufficiently allege such conduct on the part of Attorney Shufrin. Before the December 19, 1995 hearing, Alger provided Attorney Shufrin with documentation showing Alger's regular payments to MHEAC and Alger's satisfaction in full of the outstanding debt. Construing such allegations in Alger's favor, they sufficiently set forth a claim that Attorney Shufrin acted knowingly or intentionally when he represented to the Lowell District Court on December 19, 1995, and on April 8, 1996, that Alger had not been making the required payments.

GOS' final argument with respect to its liability under the FDCPA is that its conduct was, at most, a *de minimis* violation. Mindful that the district judge already viewed the first amended complaint as time barred under the FDCPA, GOS' argument requires focusing on the newly alleged activity in the second amended and supplemental complaint occurring after September 20, 1995, on the part of GOS.

These allegations include the following: (1) GOS' false statements to the process server on October 2, 1995; (2) Attorney Shufrin's false statements in court on December 19, 1995, and on April 8, 1996, that Alger had not been making the required payments; and (3) the November 1996 letter sent by GOS directly to Alger, as opposed to his attorney, containing the false statement of an outstanding payment of $50. For reasons already explained, the first two allegations state a claim for relief against GOS under the FDCPA. With respect to the third allegation, the FDCPA prohibits a debt collector from communicating with the consumer regarding a debt if the debt collector knows that the consumer is represented by counsel. 15 U.S.C. § 1692c(a)(2). The FDCPA also prohibits the debt collector from falsely representing the amount of a debt in connection with its collection. 15 U.S.C. § 1692e(2)(A).

These three allegations, taken in the aggregate, set forth more than a *de minimis* violation of the FDCPA on the part of GOS. GOS' argument, which assumes the dismissal of the first two allegations, is therefore unavailing.

GOS' remaining argument seeks dismissal of Count II, a state law claim under chapter 93. As explained *infra*, the state law claims substantially predominate the FDCPA claim. The chapter 93 and 93A claims also raise novel or complex issues of state law within the meaning of 28 U.S.C. § 1367(c)(1). It is therefore more appropriate for the state court to address the chapter 93 claim.

II. *MOTION TO DISMISS OF DEFENDANT MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION (NO DOCKET ENTRY NO. ASSIGNED)*

This court's and the district judge's resolution of the FDCPA claim against GOS calls into question the appropriateness of exercising supplemental jurisdiction over the state law claims alleging abuse of process (Count V), libel and slander (Count VI), intentional infliction of emotional distress (Count VII) and violations of chapter 93 (Count II), chapter 93A (Count III) and the MCRA (Count III). The sole federal claim involves a short period of time (September 20, 1995 to November 22, 1996), a single party (GOS) and distinct and concrete issues of liability and damages under the FDCPA. In contrast, the state law claims span a much broader period of time, primarily concern MHEAC, and implicate more complex as well as novel theories of liability. As grounds for dismissal under Rule 12(b)(1), Fed.R.Civ.P., MHEAC urges this court to exercise its discretion and dismiss the state law counts as provided for under 28 U.S.C. § 1367(c) ("section 1367(c)").

Section 1367(a) provides that, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Section 1367(a) applies to federal question cases such as this one and operates to confer supplemental jurisdiction to hear "state-law claims that arise from the same nucleus of operative facts." *Roche v. John Hancock Mutual Life Insurance Company*, 81 F.3d 249, 256 (1st Cir. 1996); *accord United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("state and federal claims must derive from a common nucleus of operative fact" and are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding"). Section 1367 essentially codifies the reasoning and analysis used in *Gibbs*. *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 (1st Cir.1995); *cf. Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3rd Cir.1995) (section 1367(a) broadens preexisting pendent jurisdiction whereas section 1367(c) simply codifies preexisting pendent jurisdiction).

Without question, the state law claims arise from the same nucleus of operative facts. All of the claims involve Alger's dispute over the amount and the means used to collect his two student loans. Under the mandatory language of section 1367(a), this court therefore has supplemental jurisdiction over the state law claims. Such jurisdiction exists notwithstanding the presence of additional parties such as MHEAC. 28 U.S.C. § 1367(a) ("supplemental jurisdiction shall in-

clude claims that involve the joinder or intervention of additional parties").

■ The decision of whether to exercise supplemental jurisdiction over the state law claims, however, "is left to the broad discretion of the district court." *Vera–Lozano v. International Broadcasting*, 50 F.3d 67, 70 (1st Cir.1995) (finding no abuse of such broad discretion in court's refusal to dismiss state law claims under section 1367(c)(1)); *accord Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 564 (1st Cir.) ("decision to retain or disclaim jurisdiction ... lies in the broad discretion of the district court"), *cert. denied,* __U.S.__, — U.S. ——, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997). Section 1367(c) lists the circumstances wherein the district court may exercise that discretion and decline supplemental jurisdiction over the state law claims. Subsections (1) and (2) are particularly relevant to the case at bar.

Section 1367(c)(1) allows the district court to refuse to exercise supplemental jurisdiction over a state claim that "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Section 1367(c)(2) expressly permits the district court to refuse supplemental "jurisdiction if the state claim 'substantially predominates over the claim or claims over which the district court has original jurisdiction.'" *Vera–Lozano v. International Broadcasting*, 50 F.3d at 70 (quoting section 1367(c)(2)). This court's exercise of its discretion, however, must be informed in the sense that it must account for "the totality of the attendant circumstances." *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d at 1177.

"[T]he interests of fairness, judicial economy, convenience, and comity" oftentimes require examination. *Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998). These concerns apply when the district court views the state claim as predominant or novel or complex under subsections 1367(c)(1) and (2), *see, e.g., Lopez–Soto v. Hawayek,* 988 F.Supp. 41, 46–47 (D.P.R.1997) (affirming district court's refusal to dismiss state claims under section 1367(c)(2) and noting that "joint adjudication serves interest of judicial economy and fairness"), as well as when the district court dismisses the federal claim and re-examines its jurisdiction over the remaining state law claims under section 1367(c)(3). *See Roche v. John Hancock Mutual Life Insurance Company*, 81 F.3d at 257; *see generally United Mine Workers of America v. Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 (where "considerations of judicial economy, convenience and fairness to litigants" are absent, "court should hesitate to exercise jurisdiction").

To begin with, the federal claim in this case is straight forward. In 1986 Congress amended the FDCPA to eliminate the exemption for attorneys. Attorneys such as GOS who regularly engage in consumer debt collection must now comply with the FDCPA even when they engage in litigation activity.[14] *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). As previously explained, GOS' actions principally involve alleged liability under sections 1692e(2) and 1692c(a)(2) with respect to only a few incidents during a concrete period of time after September 20, 1995. The FDCPA limits recovery to actual damages, statutory damages not to exceed $1,000, and reasonable attorney's fees. 15 U.S.C. § 1692k(a).

In comparison, the chapter 93 and chapter 93A claims are more problematic. Chapter 93 provides that, "No one who is a creditor or an attorney of a creditor ... of a natural person who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." Mass. Gen. L. ch. 93, § 49. The statute concludes with the language that, "Failure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A." Mass. Gen. L. ch. 93, § 49.

---

**14.** A bill, not yet enacted, would amend the FDCPA by excluding proper legal action from constituting a communication under section 1692a(2). Under the bill, section 1692a(2), which defines the term "communication," would include the following, additional sentence: "Such term does not include actions taken pursuant to the Federal Rules of Civil Procedure; in the case of a proceeding in a State court, the rules of civil procedure available under the laws of such State; or a nonjudicial foreclosure." H.R. 1059, 105th Cong. 1st Sess. (1997).

Referring to the latter sentence, the Massachusetts Supreme Judicial Court (the "SJC") stated in *McGrath v. Mishara,* 386 Mass. 74, 434 N.E.2d 1215, 1219 (1982), that "plaintiffs seeking to recover for violations of c. 93, § 49, must satisfy the requirements for recovery under c. 93A." [15] The logical extension of this broad language is that a plaintiff must satisfy all the requirements of chapter 93A in order to recover under chapter 93. Citing *McGrath,* GOS therefore urges dismissal of the chapter 93 claim due to the absence of a demand letter in compliance with chapter 93A.

Unfortunately, there is little if any case law interpreting the SJC's pronouncement in *McGrath.* Furthermore, with all deference to the SJC, an alternate reading of the final sentence in chapter 93 is that noncompliance with chapter 93 constitutes an unfair or deceptive practice for purposes of liability under chapter 93A as opposed to liability under chapter 93. This lack of clarity as to liability under chapter 93 therefore militates in favor of not exercising jurisdiction over the chapter 93 claim. *See Rodriguez v. Doral Mortgage Corp.,* 57 F.3d at 1177 (citing section 1367(c)(1) and noting that it "may be wise to forgo the exercise of supplemental jurisdiction when the state law that undergirds the nonfederal claim is of dubious scope and application").

Similarly, the chapter 93A claim raises a difficult issue of first impression with respect to the liability of MHEAC, a legislatively created corporate entity with traditional corporate powers. *See* Mass. Gen. L. ch. 15 App. § 1–2; *see generally Green v. Zendrian,* 916 F.Supp. 493, 496 (D.Md.1996) (difficult issue of first impression weighed in favor of allowing state court to resolve issue for reasons of comity). MHEAC understandably argues that because its stated purpose is "to aid and assist students to fulfill a program of higher education," Mass. Gen. L. ch. 15 App., § 1–4, its activities with Alger did not involve "trade or commerce" within the meaning of chapter 93A. *See Peabody N.E., Inc. v. Town of Marshfield,* 426 Mass. 436,

689 N.E.2d 774, 778 (1998) (chapter 93A "does not apply to parties motivated by 'legislative mandate, not business or personal reasons' "); *accord Boston Housing Authority v. Howard,* 427 Mass. 537, 695 N.E.2d 192, 193 (1998). Thus, "It is perfectly possible for a governmental entity to engage in dishonest or unscrupulous behavior as it pursues its legislatively mandated ends." *Lafayette Place Associates v. Boston Redevelopment Authority,* 427 Mass. 509, 694 N.E.2d 820, 836 (1998), *petition for cert. filed,* 67 U.S.L.W. 3376 (U.S. Nov. 25, 1998) (No. 98–863).

Alger, however, points to MHEAC's corporate powers and its alleged business activity of collecting the debt. Although the factors employed to examine whether MHEAC was engaged in trade or commerce are well established, *see Linkage v. Trustees of Boston University,* 425 Mass. 1, 679 N.E.2d 191, 207–208, *cert. denied,* —— U.S. ——, 118 S.Ct. 599, 139 L.Ed.2d 488 (1997); *Miller v. Risk Management Foundation of the Harvard Medical Institutions,* 36 Mass.App. Ct. 411, 632 N.E.2d 841, 844, *review denied,* 418 Mass. 1104, 638 N.E.2d 914 (1994), their application to MHEAC in its activity of collecting a student loan is an issue of first impression. As such, it is better left to the determination of a Massachusetts court. As counseled by the Supreme Court in *Gibbs,* "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130.

In addition to the "dubious scope and application" of state law, *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d at 1177, the predominance of the state law claims overshadows the concrete and circumscribed FDCPA claim against GOS. Where "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be

---

**15.** Because the plaintiffs in *McGrath* did not suffer a loss of money or property within the meaning of chapter 93A, the SJC affirmed the trial court's judgment in favor of the defendants on the chapter 93 claim. *McGrath v. Mishara,* 386 Mass. at 78–79, 434 N.E.2d 1215.

dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers of America v. Gibbs*, 383 U.S. at 726–727, 86 S.Ct. 1130; 28 U.S.C. § 1367(c)(2).

In the case at bar, all of the state claims involve the liability of MHEAC, a nonparty to the federal claim.[16] The evidence needed to decide liability for abuse of process, intentional infliction of emotional distress, libel and slander and violations of chapter 93, chapter 93A and the MCRA is far greater than the evidence required to decide liability under the FDCPA claim. Proving the claims against MHEAC as well as the chapter 93 claim against GOS will significantly broaden the scope of liability and the range of defenses at trial. MHEAC's liability under the six state law claims and GOS' liability under the chapter 93 claim span a far longer period of time than GOS' liability under the FDCPA claim. In sharp contrast to the state claims, GOS' liability under the FDCPA claim encompasses only a limited number of incidents and a limited number of liability issues under the relevant statutory sections of the FDCPA. *See Town of Jaffrey v. Town of Fitzwilliam*, 846 F.Supp. 3, 5 (D.N.H.1994) (declining supplemental jurisdiction over state claims which would "substantially broaden the scope of possible liability"); *see also Diven v. Amalgamated Transit Union International and Local 38* F.3d 598, 602 (D.C.Cir.1994) ("relative weaknesses of federal claim and concomitant primacy of the state law issues are evident when examining the factual and legal basis for appellants' claims"); *Green v. Zendrian*, 916 F.Supp. at 498 ("federal courts have not hesitated to dismiss" state claims where they "would require 'elements of proof that are distinct and foreign to the federal claim' ").

The only overlap between the theories of liability in the state and federal claims is the chapter 93 claim against GOS and the FDCPA claim against GOS for communicating directly with Alger instead of his attorney.. *Cf.* Mass. Gen. L. ch. 93, § 49(b); and 15 U.S.C. § 1692c(a)(2). Even the chapter 93 claim against GOS, however, involves GOS' unfair, deceptive or unreasonable collection efforts during a time period significantly longer than that at issue under the FDCPA.[17] In addition, Attorney Shufrin's purportedly false statements in open court may subject GOS to liability under the FDCPA whereas such statements are subject to a privilege under state common law. *See Sriberg v. Raymond*, 370 Mass. 105, 345 N.E.2d 882, 883 (1976) ("statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided that such statements relate to that proceeding"); *Loomis v. Tulip, Inc.*, 9 F.Supp.2d 22, 24–25 (D.Mass.1998); *cf.* F.R.E. 501.[18]

The FDCPA claim also raises distinct grounds for liability set forth in a clear and straight forward manner in the statute. When coupled with the multitude of state claims, however, this action is far more likely to lead to confusion on the part of the jurors. Additionally, the measure of damages under the FDCPA, 15 U.S.C. § 1692k(a), varies from the measure applicable to the state claims. *See generally Fisher v. Somerville School District*, 874 F.Supp. 448, 450 (D.Mass.1995) (similar damages under state and federal claims weighed in favor of litigating state and federal claims in federal forum). Finally, neither party identifies a significant federal policy weighing against dismissing the state claims. *Cf. United Mine Workers of America v. Gibbs*, 383 U.S. at 727, 86 S.Ct. 1130 (noting that "the allowable scope of the state claim implicates the federal doctrine of pre-emption").

Turning to the statute of limitations, *see Rodriguez v. Doral Mortgage Corp.*, 57 F.3d at 1177 ("running of the statute of limitations

---

**16.** The chapter 93 claim additionally involves the liability of GOS.

**17.** A four year limitations period applies to the chapter 93 claim. *See Baldassari v. Public Finance Trust*, 369 Mass. 33, 337 N.E.2d 701, 708 (1975).

**18.** Congress' 1996 amendment to the FDCPA, making the written warnings inapplicable to formal pleadings made in connection with legal proceedings, 15 U.S.C. § 1692e(11), evidences an intent and an awareness that the FDCPA otherwise encompasses litigation activity. *See also* footnote number 14 *supra*.

on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor" in "deciding whether to retain supplemental jurisdiction"), Alger is not barred from proceeding with all of his claims in state court. Section 1367(d) tolls the running of the statute of limitations on the state claims "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d); *see Roden v. Wright*, 611 So.2d 333, 333 (Ala.1992); *Rothmeier v. Investment Advisers, Inc.*, 556 N.W.2d 590, 593 (Minn.Ct.App.1996). Because section 1367(d) also tolls the limitations period for claims voluntarily dismissed, Alger has the option of dismissing the FDCPA claim and proceeding with it in state court to avoid dual proceedings in both state and federal forums.[19] *See* Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis*, 24 Ariz.St. L.J. 849, 982–984 (1992).

Nevertheless, discovery is set to close in this case on March 1, 1999. *See generally Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d at 564 n. 34. On the other hand, there is no trial date or deadline for the filing of summary judgment motions. Because MHEAC sought to dismiss the state law claims well before the discovery deadline, it should not be penalized for any delay in the issuance of a decision on the motion. Furthermore, comparing the proof required to establish liability for the six state claims to the proof required to establish liability for the federal claim, it becomes readily apparent that the state claims constitute the foundation of this case. As explained by the Supreme Court in *Gibbs*, the progression of a case beyond the initial stages does not automatically preclude dismissal of the state claims:

Although it will of course be appropriate to take account in this circumstance of the already completed course of the litigation, dismissal of the state claim might even then be merited. For example, it may appear that the plaintiff was well aware of the nature of his proofs and the relative importance of his claims; recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.

*United Mine Workers of America v. Gibbs*, 383 U.S. at 727.

The most troubling aspect of declining supplemental jurisdiction over the state law claims, however, is the prospect that GOS will face dual proceedings, one in state court with respect to the chapter 93 claim and the other in this court with respect to the FDCPA claim. Nevertheless, as previously discussed, the chapter 93 claim differs in significant and material respects from the FDCPA claim. It spans a much longer period of time thereby encompassing different facts leading to liability. It also involves a different, albeit not dramatically different, theory of liability. The risk of a duplicative recovery of damages with respect to the November 1996 communication with Alger is minimized through principles of claim preclusion.[20] Fairness, however, dictates that this court allow GOS the opportunity to object to proceeding in both forums. Dismissal of the chapter 93 claim against GOS is therefore subject to allowing GOS the opportunity to file a motion for reconsideration demonstrat-

---

19. Section 1692k of the FDCPA allows an FDCPA claim to proceed in state as well as in federal court. The provision, entitled "Jurisdiction," reads as follows:

An action to enforce liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

15 U.S.C. § 1692k(d).

20. Contrary to the position of MHEAC, however, the Boston Municipal Court judgment in 1985 for the $6,238.22 amount owed on the loans does not bar a subsequent FDCPA suit. *See Whitaker v. Ameritech Corporation*, 129 F.3d 952, 958 (7th Cir.1997) (although applying Illinois law, state court default judgment for amount owed on telephone bill was not *res judicata* as to FDCPA claim).

160

ing any unfair prejudice on or before March 1, 1999.[21]

### CONCLUSION

In accordance with the foregoing discussion, GOS' motion to dismiss (Docket Entry # 31) is **DENIED** with respect to the FDCPA claim. Due to this court's *sua sponte* dismissal of the chapter 93 claim against GOS without prejudice, the motion to dismiss (Docket Entry # 31) with respect to the chapter 93 claim requires no judicial ruling at this time. Rather, it is more appropriately addressed by a state court.

MHEAC's motion to dismiss (No Docket Entry No. Assigned) is **ALLOWED** to the extent that counts II through VII are dismissed without prejudice.

---

**21.** Because "[a]ll federal courts have a duty to review their own jurisdiction, *sua sponte,* if necessary," *Stires v. Sprint Corporation,* 1995 WL 632077 at * 4 (D.N.J. Sept.18, 1995), this court has the authority to dismiss the chapter 93 claim against GOS *sua sponte* pursuant to section 1367(c). *See, e.g., Salovaara v. Eckert,* 1998 WL 276186 at * 9 (S.D.N.Y. May 28, 1998); *Melsness v. Wahl Clipper Corporation,* 1998 WL 241511 at * 6 n. 6 (N.D.Ill. April 24, 1998); *Saavedra v. City of Albuquerque,* 917 F.Supp. 760, 762 (D.N.M. 1994) (dismissing state claims *sua sponte* pursuant to section 1367(c)(1) and (3)); *Winn v. North American Philips Corporation,* 826 F.Supp. 1424, 1425–1426 (S.D.Fla.1993) (dismissing novel and complex state law claims *sua sponte* pursuant to section 1367(c)).