**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0407-19T1

LAURA RUCCOLO,

    Plaintiff-Appellant,

v.

ARDSLEY WEST COMMUNITY
ASSOCIATION, INC.,

    Defendant-Respondent.

_____

               Submitted December 9, 2020 – Decided  January 11, 2021

               Before Judges Whipple, Rose and Firko.

               On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. DC-000228-17.

               Capehart & Scatchard, attorneys for appellant (Alan Paul Fox, on the briefs).

               Cutolo Barros LLC, attorneys for respondent (Karyn Ann Branco, of counsel and on the brief; Jason N. Sena, on the brief).

PER CURIAM

This matter involves a longstanding dispute between plaintiff Laura Ruccolo and defendant, Ardsley West Community Association, Inc., the homeowner's association (HOA) for her residential community.[1] After engaging in litigation, the parties entered into a consent order on May 19, 2017, wherein the HOA agreed plaintiff's unit was substantially in compliance with HOA rules and enjoined the HOA from sending her any communication suggesting she violated the governing documents. Plaintiff appeals the August 19, 2019 Law Division order denying her motion to enforce litigant's rights. We affirm.[2]

I.

The following facts are derived from the motion record. In June 1996, plaintiff purchased a townhome in defendant's development located in Marlton. At the time of closing of title, plaintiff was provided with defendant's by-laws and the Declaration of Covenants, Conditions and Restrictions (CC&R). The exact origin of the dispute between the parties is not part of the record; however, plaintiff contended she had no issues until the current board members took control of the community. Between 2010 and 2016, defendant claimed plaintiff

---

[1] We refer to defendant and HOA interchangeably throughout this opinion.

[2] Defendant filed a cross-motion to vacate the May 19, 2017 consent order, which was denied by the motion judge. This appeal is limited to the denial of plaintiff's motion to enforce litigant's rights.

A-0407-19T1

was in violation of its by-laws and CC&R for failing to power wash the rear of her townhome to remove algae and moss and for not sufficiently manicuring the mulch beds on her property.

Plaintiff's backyard has a six-foot-high fence and there are no homes situated behind her townhome. She asserted because failing to power wash does "not present any public health or safety issue, did not impact property values in the AWTD [(Ardsley West Townhouse Development)] or the aesthetics of the community," that there was no legitimate purpose for defendant to compel her to do so.

According to plaintiff, there were no rules in effect within the governing documents covering the matters defendant complained of. During the subject time frame, plaintiff claimed defendant approved a homeowner's manual, which included architectural guidelines requiring homeowners to maintain their properties, such as power washing and weeding, at defendant's discretion. In response, defendant contended that whether the rules were in place or not, the subsequent approval of the homeowner's manual by a quorum of the board sufficiently remedied any potential earlier procedural omissions.

On January 11, 2017, plaintiff filed a complaint in the Law Division challenging defendant's actions (the 2017 litigation). In her complaint, plaintiff

averred that defendant had exceeded its authority in adopting certain rules, regulations, and restrictions in violation of the community's governing documents. Plaintiff alleged the HOA had gone "rogue," and failed to conduct open meetings with the owners. In addition, plaintiff asserted the HOA created arbitrary and capricious rules and regulations giving defendant "unfettered unilateral power" to declare a violation without notice to plaintiff.

The parties resolved their differences by entry of the May 19, 2017 consent order. In pertinent part, the consent order restrained defendant "from sending [p]laintiff any letter, email or any other <u>communication claiming [p]laintiff is in violation</u> of [d]efendant's [CC&R], By-Laws, Architectural Guidelines and/or Rules and Regulations [(governing documents)] . . . ." (emphasis added). At the time of execution, the consent order noted that plaintiff's townhome was in compliance with some, but not all, existing HOA guidelines.

Potential areas of concern, such as structural repairs to the townhome, driveway, and fences were excluded from the scope of the consent order. Paragraph four of the consent order reserved the right for defendant to move to amend or vacate the consent order upon a showing defendant revised its governing documents to comply with both New Jersey statutory law and the

"reasonableness" factors set forth in <u>Davidson Bros. Inc. v. D. Katz & Sons</u>, 121 N.J. 196 (1990).

In the fall of 2018, plaintiff alleged that defendant subsequently engaged in further improper conduct and failed to hold proper elections. Looking to avoid litigation, plaintiff confronted defendant about its alleged miscreant actions. In response, defendant threatened to sue plaintiff for attorneys' fees under the governing documents in the event she challenged defendant with formal action. Defendant's counsel alleged in a November 20, 2018 letter addressed to plaintiff personally that plaintiff attempted to leverage her position as vice-chair of the commercial litigation department at her law firm in order to dissuade defendant's counsel from continuing to litigate the matter.

Thereafter, on December 14, 2018, plaintiff filed another complaint against defendant and its board members (the 2018 litigation) premised upon her dissatisfaction with recent HOA decisions and alleged acts or omissions predating the 2017 litigation. In response, defendant filed an answer and counterclaim against plaintiff.

On March 5, 2019, plaintiff simultaneously filed a motion to enforce litigant's rights in the 2017 litigation and a motion to dismiss defendant's counterclaim in the 2018 litigation. Plaintiff claimed defendant's counterclaim

was "vengeful" and that defendant was "intent on seeking revenge." On May 21, 2019, the judge denied plaintiff's motion to enforce litigant's rights in the 2017 litigation as moot, granted plaintiff's motion to dismiss defendant's counterclaim in the 2018 litigation, and permitted plaintiff leave to file and serve an amended complaint in the 2018 litigation.

On May 28, 2019, plaintiff filed a first amended complaint in the 2018 litigation. Defendant again chose to file a counterclaim and sought a declaratory judgment that the HOA was allowed to promulgate rules pursuant to the community's governing documents and all townhome owners, including plaintiff, are required to abide by their terms.

On June 24, 2019, plaintiff filed a second motion to enforce litigant's rights relative to the 2017 litigation on the grounds that defendant's counterclaim in the 2018 litigation constituted a "communication" in violation of the consent order. She also asserted the second count of the counterclaim "is equivalent to a SLAPP[3] suit" and meant to deter plaintiff from exercising her legal rights. Plaintiff did not dispute defendant's right to file an answer to the complaint. Further, plaintiff asserted that defending the complaint was insufficient for

---

[3] SLAPP is an acronym for, "Strategic Lawsuit Against Public Participation." See LoBiondo v. Schwartz, 323 N.J. Super. 391, 418 (App. Div. 1999).

defendant "who [wa]s intent on seeking revenge against plaintiff for daring to question their [sic] actions," and the counterclaim was "designed to intimidate and harass" her and "chill her from exercising her legal rights."

In its opposition to plaintiff's motion to enforce litigant's rights, defendant denied its counterclaim was a "communication," the counterclaim was not prohibited by the consent order and was required to be pled under the entire controversy doctrine. Defendant also filed a cross-motion to vacate the 2017 consent order.

On August 16, 2019, the judge heard oral arguments on the motion and cross-motion. On August 19, 2019, in a comprehensive, thorough statement of reasons, the judge denied both motions. In denying plaintiff's motion to enforce litigant's rights, the judge determined that the consent order did not bar the filing of the counterclaim in the 2018 litigation because it is not a "communication" as defined by the consent order and "does not fall within the scope of the [c]onsent [o]rder." The judge explained:

> Our courts have made clear that "[a] consent order is, in essence, an agreement of the parties that has been approved by the court." Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014). As such, a consent order operates as a contract between the parties. See ibid. Therefore, in construing a consent order, a court "examine[s] the plain language of the contract and the parties' intent, as evidenced by the contract's

7

purpose and surrounding circumstances." Ibid. (quoting Highland Lakes Country & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115 (2006)). "In doing so, 'the words of an agreement are given their "ordinary" meaning.'" Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (quoting Flanigan v. Munson, 175 N.J. 597, 606 (2003)). "[I]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alternation in original) (quoting In re [County] of [Atlantic], 230 N.J. 237, 254 (2017)).

Paragraph 1 of the [c]onsent [o]rder provides:

> The [d]efendant Ardsley West Community Association is hereby enjoined, until further order of this [c]ourt, from sending [p]laintiff, any letter, email or any other communication claiming [p]laintiff is in violation of [d]efendant's, [CC&R], By-Laws, Architectural Guidelines and/or Rules and Regulations . . . .

The judge concluded the counterclaim filed by defendant in the 2018 lawsuit is not barred by the consent order or the entire controversy doctrine "[g]iven the context of the 2017 [l]awsuit." In addition, the judge noted that "[p]laintiff's reading would effectively bar [d]efendant from filing responsive pleadings and other documents with the [c]ourt."

As to defendant's cross-motion to vacate the consent order, the judge denied the relief sought because defendant failed to sustain its burden of proof that the amended rules, regulations, and the homeowner's manual "comply with

New Jersey law; comply with N.J.S.A. 45:22A-44; and meet the 'reasonableness' factors set forth in Davidson Bros., Inc. . . . ."  A memorializing order was entered by the judge.  This appeal ensued.

On appeal, plaintiff argues that the judge erred by denying her motion to enforce litigant's rights and failing to interpret the plain language of the consent order, the surrounding circumstances, and the parties' intent.  Plaintiff also contends that the term "communication" in the consent order includes pleadings, and the judge erred in denying plaintiff's motion to enforce the consent order.

II.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).  A trial court's interpretation of the law is generally reviewed de novo.  Occhifinto v. Olivo Constr. Co. LLC, 221 N.J. 443, 453 (2015).  More specifically, interpretation and construction of a contract, such as the consent order in this case, is a matter of law for the trial court, subject to de novo review on appeal. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998); see Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

"Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

The trial court properly found that defendant's counterclaim is not a communication barred by the consent order. Consent orders are essentially unique contracts, and thus in construing a consent order courts should use principles of contract interpretation. "A consent order is, in essence, an agreement of the parties that has been approved by the court." Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014). As such, a consent order operates as a contract between the parties. See ibid. Importantly, "it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007).

The court must "examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." Hurwitz, 438 N.J. Super. at 292 (quoting Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115 (2006)). "In doing so, 'the words of an agreement are given their "ordinary" meaning.'" Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (quoting Flanigan v.

<u>Munson</u>, 175 N.J. at 606). "[I]f the contract into which the parties have entered is clear, then it must be enforced as written." <u>Serico v. Rothberg</u>, 234 N.J. 168, 178 (2018) (alteration in original) (quoting <u>In re County of Atlantic</u>, 230 N.J. 237, 254 (2017)); <u>see also</u> <u>Kampf v. Franklin Life Ins. Co.</u>, 33 N.J. 36, 43 (1960) (holding that courts generally enforce contracts as written).

Here, the motion judge properly interpreted the consent order and found that defendant's counterclaim was not a "communication" barred by the terms of the parties' agreement. The terms of the consent order are clear and unambiguous. The consent order states that defendant is "enjoined, until further order of this [c]ourt, from sending [p]laintiff any letter, email or any other communication claiming [p]laintiff is in violation of the [d]efendant's [CC&R], By-Laws, Architectural Guidelines and/or Rules and Regulations, except for the exclusions set forth in paragraph [two] below."

In evaluating the circumstances surrounding the execution of the contract the court must focus on only those intentions that have been manifested and revealed to the other party. As we previously noted, "[a] contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she had a different, secret intention from that

outwardly manifested." Brawer v. Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000) (quoting Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)).

Plaintiff argues that "the intent of the consent order was to cease being required to defend defendant's false claims that she was in violation of the covenants, by-laws and rules and regulations." We conclude, as did the motion judge, that this alleged intent is clearly not reflected in the language of the consent order and is contrary to a logical result. Interpreting the consent order as plaintiff suggests would essentially deprive defendant of any ability to enforce the governing documents of the community as against plaintiff and essentially serve as a "judicial gag order." We reject plaintiff's argument that her reasoning for entering the consent order is where the analysis should end.

In order for a party to waive a right which it would otherwise possess, it "must be clearly and unmistakably established" that the party sought to waive the right. Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 444 (2014). Here, the plain terms of the consent order barred defendant from sending notices of violations to plaintiff but did not waive defendant's right to initiate or pursue judicial proceedings against plaintiff. Moreover, the language agreed upon by the parties in the consent order clearly indicates that their mutual intent was to

prevent defendant from harassing plaintiff with repeated notices of violations of community guidelines.

After reviewing the record in light of these principles and facts, the judge properly applied the "basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." Pacifico, 190 N.J. at 266. Courts usually enforce contract as written. Kampf, 33 N.J. at 43. Here, the judge aptly noted that "[p]laintiff's reading would effectively bar [d]efendant from filing responsive pleadings and other documents with the [c]ourt." Based upon the substantial, credible evidence in the motion record, the judge properly denied plaintiff's motion to enforce litigant's rights.

III.

Plaintiff also argues the trial court erred in denying her motion to enforce the consent order because the trial court improperly interpreted the word "communication" to exclude defendant's counterclaim. Specifically, plaintiff contends defendant's counterclaim, but not defendant's answer, constituted a communication barred by the consent order because "the [c]ounter[][c]laim communicates to [p]laintiff, the court[,] and the public" "specific information about the [p]laintiff's alleged violations of [the] HOA's Declarations, By-Laws[,] and Rules and Regulations." In support of her allegation that pleadings

constitute communications, plaintiff makes an analogy to case law interpreting the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. We are not persuaded by plaintiff's argument.

The FDCPA, among other things, governs communications in connection with debt collection. 15 U.S.C. § 1692. Plaintiff cites to non-precedential cases from the United States Court of Appeals for the Ninth Circuit, the United States Court of Appeals for the Seventh Circuit, and the United States District Court for the District of Massachusetts.[4] And, plaintiff cites Heintz v. Jenkins, 514 U.S. 291 (1995) for the proposition that "engaging in litigation constitutes 'communication.'"

The Supreme Court in Heintz held that the term "debt collector" in the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Id. at 295. With respect to 15 U.S.C. § 1692c, the provision which requires a debt collector to cease communicating with a consumer who notifies the collector that he or she refuses to pay the debt, the plaintiff argued an attorney would be prohibited

---

[4] Donohue v. Quick Collect Inc., 592 F.3d 1027 (9th Cir. 2010); Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914 (7th Cir. 2004) (en banc), rev'g 354 F.3d 696 (7th Cir. 2004); and Alger v. Ganick, O'Brien & Sarin, 35 F. Supp. 2d 148, 158 n.18 (D. Mass. 1999), respectively.

A-0407-19T1

from filing a lawsuit against a nonconsenting consumer because engaging in litigation would constitute impermissible communication.

The Court explained even though "an ordinary court-related document does, in fact, 'notify' its recipient that the creditor may 'invoke' a judicial remedy," and thus is a communication, "it would be odd if the [FDCPA] empowered a debt-owning consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." Id. at 296. Moreover, the Court reasoned that it was not necessary to read 15 U.S.C. § 1692c(c) in such a way, however, because the provisions of the FDCPA contain "exceptions that permit communications 'to notify the consumer that the debt collector may invoke' . . . a 'specified remedy.'" Id. at 296.

While plaintiff cites this case to bolster her argument that "legal pleadings have been interpreted by the courts as being included under the definition of a 'communication' under the FDCPA," her reliance is misplaced. Defendant's counterclaim can plausibly be characterized as a communication notifying plaintiff that defendant was invoking a specified remedy. Consequently, plaintiff's attempt to characterize defendant's counterclaim as an impermissible communication lacks merit because, when analogized to the FDCPA, defendant's counterclaim could arguably fall into one of the FDCPA's

exceptions. Saliently, the FDCPA is statutorily defined and proscribed, whereas the consent order here is a mutual agreement between the parties that is to be interpreted in accordance with their reasonable expectations, not as the legislature proscribed.

Based on the motion record, we are satisfied the judge properly concluded that construing defendant's counterclaim as a "communication" under the terms of the consent order would inappropriately restrain defendant and materially expand the language of the clear and unambiguous consent order in plaintiff's favor. In particular, we reject plaintiff's argument that defendant had a right to join issue and file an answer and affirmative defenses to her complaint but not a counterclaim. Plaintiff's argument is circuitous and devoid of merit.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0407-19T1